Robert SEALS, Individually and on behalf of all others similarly situated, Plaintiff,

v.

William J. NICHOLL, Individually and in his official capacity as Commanding Officer, Automotive Pounds Section, Chicago Police Department, and James B. Conlisk, Jr., Individually and in his official capacity as Superintendent, Chicago Police Department, Defendants.

No. 73 C 693.

United States District Court, N. D. Illinois, E. D.

Oct. 30, 1973.

Mark Spiegal, Robert H. Smith, Mandel Legal Aid Clinic, Chicago, Ill., for plaintiff.

Michael S. Jordan, Richard Curry, Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff has brought this civil rights action under 42 U.S.C. § 1983 for damages and declaratory and injunctive relief for the seizure, impoundment and destruction of his automobile by the Chicago Police Department, allegedly pursuant to orders and instructions issued by defendants relating to the disposition of automobiles in the possession of arrestees. The jurisdiction of the court is asserted under 28 U.S.C. §§ 1343(3) and 1343(4) and 28 U.S.C. §§ 2201 and 2202.

Plaintiff's request for designation of this suit as a class action under Rule 23(a) and (b), Fed.R.Civ.P., has already been denied. Defendants' motions to dismiss the complaint for failure to state a claim upon which relief can be granted and for lack of jurisdiction over the subject matter and the parties have also been denied along with their motion for summary judgment.[1] The motion now before the court is for summary judgment in favor of plaintiff on the issue of liability. For the reasons set out below, plaintiff's motion will be granted.

I

Plaintiff Seals was arrested late in the evening of October 7, 1972, after being observed carrying a battery from a 1964 Pontiac to his own 1959 Thunderbird. Both cars were parked in a private lot adjoining a grocery store from which plaintiff had just emerged. When questioned by police officers, plaintiff showed them the keys and bill of sale to his own car, the Thunderbird, but had no other legal proof of ownership as to either vehicle. He was then placed under arrest, advised of his constitutional rights and transported to the station where he was charged with petty theft of the Pontiac's battery. The next morning he appeared with one of the arresting officers in the Circuit Court of Cook County where his bond was set at $500. Being unable to meet his bond, he remained in jail for 18 days until October 25, 1972, when the charges against him were dropped and he was released.

Plaintiff's Thunderbird, as mentioned above, was parked in the private parking lot where he was arrested. The car's front end was flush against the brick wall adjoining the south side of the lot and was blocking neither the street, driveway nor sidewalk. The evening he was arrested and during the next day, the arresting officers made various checks on the serial number of the Thunderbird to both local and national auto theft services and found that there

was no report of a stolen vehicle of that number and description. However, twenty-four hours after the arrest, at 10:40 p.m. the evening of October 8, 1973, the arresting officers ordered the Thunderbird towed from this lot to Auto Vehicle Pound #2, marking the Vehicle Tow Report that it was seized as "prisoner's property." As such, it could not be held for evidence, forfeiture or any other purpose, and once at the pound, had to be released immediately to anyone who presented proper evidence of ownership and paid towing and accrued storage fees.

Pursuant to normal procedure, the officer at the pound inquired of the office of the Secretary of State to determine the registered ownership of the vehicle. Upon learning it was owned by plaintiff Seals, a Chicago Police Department form notice was sent certified mail, return receipt requested, to Seals at the address given on the automobile registration form, telling where the car was being held and that he would lose all right and interest in it if he did not claim it and pay towing and storage fees within fifteen days. No reference was made to any opportunity to challenge the seizure in order to avoid the payment of fees.

This notice was returned to the police department undelivered. At the time it was sent, defendants' agents at the pound had in their possession the Vehicle Tow Report which clearly indicated that the car was seized as prisoner's property, but no attempt whatsoever was made to inquire whether or not plaintiff was in jail, as he was, and to send notice there or to inform him of what was about to happen to his automobile.

Plaintiff never learned of the impending loss of his car. On October 26, 1972, the day after Seals' release, since no one had claimed it, the Thunderbird was destroyed. Plaintiff first found out about its seizure and subsequent destruction when he made inquiries about it on October 30, 1972.

1.  Order of Court, September 26, 1973.

The initial seizure of the automobile, the failure to provide any procedural opportunity to contest the validity of the seizure, and the inadequacy of the notice sent to plaintiff's home are all challenged as violative of plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

II

The first issue raised is the validity of the initial seizure of plaintiff's Thunderbird. Our review of the challenged orders and regulations of the Chicago Police Department lead us to conclude that, whether or not they are valid, this particular seizure was in violation of those rules, rather than in conformance with them as both plaintiff and defendants here contend. Police Department Special Order #69–66 states that immediate tows may be ordered by department members for "Prisoner's Property." The instruction sheet for filling out the Vehicle Tow Report Form, CPD–5045 (12/70), specifies three situations when a tow will be authorized of a vehicle under the control of a person when he is arrested. The first is when the prisoner himself requests it. The second is where the car cannot be parked legally and continuously and no arrangement can be worked out for moving it to a legal place. And, the third is where the car is to be retained for evidence or further investigation.[2]

While, in their brief and supporting affidavits, defendants allude to all three of these situations in their attempt to justify the seizure of plaintiff's car, the uncontested facts show that none are applicable. First, plaintiff did not request a tow of his automobile. Consequently, defendants' protestations that this tow was an accommodation to the arrestee's desire to protect his property and, as such, in his own best interests, are clearly unwarranted.

Second, defendants argue the seizure was valid because, *inter alia*, it constituted a hazard, was in a state of disrepair, and was appropriately towed as a nuisance to the public way. These assertions can be subsumed under the single purported justification that the vehicle was illegally parked. However, an examination of the uncontested facts and the applicable statutes and ordinances reveal no violation of the state's or city's traffic laws by the location of plaintiff's car. As noted above, the car was not in or on a public way but was parked in a private parking lot owned by a nearby grocery store. Its front end was flush against a brick wall and it was blocking neither street, driveway or sidewalk. Thus, it could not constitute a hazard or obstruction to traffic. The Department's own Training Bulletin, Vol. XIII, Number 35, states:

> The Department will NOT tow a motor vehicle from a "public parking lot" "private parking lot" or "private property where parking is encouraged." . . . . Private property where parking is encouraged includes parking lots maintained without charge to the customers for their convenience, e. g. at shopping centers, supermarkets, restaurants, etc. *Unauthorized parking on such premises is not a violation of the law and therefore no citations will be issued in these situations.* (emphasis supplied)

Since it is not disputed that the car was parked on private property where parking is encouraged, the arresting officers were acting in defiance of the department's own order in having plaintiff's car towed.

The final justification for the towing of a prisoner's car is if it is needed as evidence or for further investigation. Once again, defendants' brief and affidavits contain references to this basis for the seizure in such statements as "I concluded that the vehicle might by useful and necessary to serve as evidence

---

**2.** Copies of both Police Department Special Order #69–66 and Vehicle Tow Report Form CPD–5054 (12/70) are attached in the Appendix to this Memorandum Opinion.

should a later verification of the title of said vehicle demonstrates that Mr. Seals had no interest or right to it," (Heard affidavit, p. 2); and that the automobile and its contents were "evidence and contraband intimately connected with the alleged offense," for which Seals was arrested. (Defendants' brief, p. 4). However, these assertions fly in the face of the fact that plaintiff's car was *not* ordered towed or held as evidence or for further investigation. The pound to which it was sent was not directed to hold the car, and could not have done so. It had to be released to any individual who produced the proper title and paid the accrued fees. Had the officers wanted the car to be retained as evidence, they would have had to fill out a series of questions on the Tow Report pertaining to that type of seizure, and would have ordered the car sent to an entirely different Auto Pound. The answer to the complaint itself admits that the auto was "not seized either as contraband, evidence or for forfeiture." (Complaint ¶14)

A wholly separate issue is whether or not this vehicle *could* have been seized for evidence or investigation without first obtaining a warrant. At the time of ordering the tow, more than 24 hours after the arrest, the officers had already determined that the car had not been reported as stolen and either had or could have determined that it was registered in the Illinois Secretary of State's office to Seals. We need not reach that issue, however, since it is clear that the evidentiary justification was not the basis for ordering the tow.

■■ Thus, the arresting officers in this case did not have any basis in their own departmental regulations and orders for having plaintiff's car towed. The tow here was not ordered pursuant to any policy promulgated by defendants Conlisk and Nicholl, and, in fact, appears to have been ordered in direct contradiction of departmental policies. If those rules had been followed, plaintiff's car would not have been towed. Accordingly, while plaintiff's rights may have

been infringed, we fail to see any basis for holding the named defendants Nicholl and Conlisk responsible for this action. It was the arresting officers, not named in this complaint, who, by acting in conflict with departmental orders, were responsible for this injury to plaintiff's rights. Since the doctrine of respondeat superior is not applicable in actions brought under Section 1983, Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), defendants Conlisk and Nicholl are not proper parties to this aspect of plaintiff's claim.

### III

■ The conclusion with respect to the seizure issue does not end the case, however. Even though the named defendants may not have been responsible for the initial seizure of plaintiff's car, the procedures attacked with regard to its disposition after seizure are indeed those specifically promulgated or approved by defendants Conlisk and Nicholl.

The first question in this regard is the validity of the notice procedure whereby defendants purported to inform plaintiff of the pending disposition of his automobile. As stated above, after determining the ownership of the vehicle from the records of the Secretary of State of Illinois, defendants sent notice by way of certified mail, return receipt requested, to Seals at the address listed on those records. This was done notwithstanding the fact that the officers at the pound had in their possession the Vehicle Tow Report form clearly indicating that the car had been towed as "prisoner's property." No inquiry was made to determine whether or not plaintiff was in jail, and, if so, to notify him there.

Defendants argue this attempt to notify plaintiff was both constitutionally adequate and specifically directed by state law. It is neither. The United States Supreme Court has ruled on this exact point in an analogous case involving the same type of notice as was sent out here. Robinson v. Hanrahan, 409 U.S.

38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972). There, the State of Illinois instituted forfeiture proceedings against an arrestee's automobile while he was incarcerated awaiting trial. Notice of the forfeiture proceedings was sent to him at his home address, as listed with the Secretary of State, notwithstanding the State's knowledge that he was in jail. He remained in jail until after the conclusion of the proceedings, and only learned of the forfeiture upon his release.

In finding the notice unconstitutional, the Court reiterated its earlier ruling in Mullane v. Central Hanover Bank & Trust Co., that:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

The State's action in sending notice to an address where it knew appellant neither was at the time, nor could get to because of his incarceration, was held not to constitute an "effort to provide notice which was 'reasonably calculated' to apprise appellant of the pendency of the forfeiture proceedings." 409 U.S. at 40.

Similarly, sending notice of an impending final disposition of his car to plaintiff's home address in this case, when the State knew he was in jail and would not receive the notice, cannot be found to comport with the most fundamental requirements of due process of law and is therefore constitutionally inadequate.[3]

### IV

▮ Plaintiff's final contention is that the failure to provide any procedur-

al opportunity to challenge the validity of the seizure of the automobile is a violation of his rights under the Fifth and Fourteenth Amendments to the Constitution. We agree. Neither state statutes, city ordinances, nor police department practices or regulations make any provision for the holding of any kind of hearing to determine whether there was a valid basis for the seizure and impoundment of a vehicle in the first place or the validity of requiring a party to pay towing and storage costs within fifteen days of the mailing of a notice or forfeit all claim to his car. Thus, even though an order to tow a car may be clearly invalid, as in the instant case, a citizen is forced to elect to pay or relinquish all rights in his property.

Even if plaintiff Seals *had* received notice of the impending destruction of his car, and *had* been able to go to the pound within fifteen days with sufficient proof of ownership he would not, under present procedures, have been able to assert that the arresting officers had ordered his car towed improperly, and that therefore he should not be penalized by having to pay the towing and storage fees.

Clearly, this involves the same fundamental Constitutional question as discussed in connection with the notice provisions: one may not be deprived of one's property without due process of law. The procedure followed here and dictated by the applicable statutes, ordinances, and police regulations converts the tow order into a unilateral and final determination that the owner of a towed car has been guilty of a violation of some law. As such, he is automatically responsible either to pay the towing and storage charges, $20 for towing and $2 per day for storage, or lose his automobile—without any opportunity to challenge the determination of guilt other than by a federal suit such as the present one, brought for deprivation of civil rights. Even a ticket for a parking

---

3. Whether or not this procedure was directed by state law has no relevance to its adequacy, but will be discussed later in the context of defendants' assertion of good faith as a defense.

meter violation—where the fines assessed are negligible compared to the amounts involved here—entitles one to a hearing and a judicial finding of liability before any penalty can be assessed.

Obviously, if Seals had requested a tow of his car, in order to protect his property, he would have no ground for objection. Or, if the automobile had been towed on the evidentiary rationale, any order would have had to comport with the search and seizure protections of the Fourth Amendment or be subject to attack on that ground prior to any trial. But he did not request the tow, and the car was not seized as evidence. He was thus left without any opportunity whatsoever to challenge the validity of the arresting officers' towing order. This clearly constitutes a deprivation of his constitutional right to due process of law.

### V

■ The only issue remaining is whether or not defendants Conlisk and Nicholl can avoid liability for damages because of their asserted good faith compliance with what they considered to be valid statutes and ordinances in promulgating the procedures involved. Even following the admonition to defer to a public official's narrow reading of constitutional law "unless patently unreasonable and without arguable support in logic and policy," Slate v. McFetridge, 484 F.2d 1169, 7th Cir., 1973, we do not see how defendants here can avoid liability for damages in this case.

With regard to the defective notice, defendants point out that the Robinson case, supra, was not decided until after the acts complained of here, and, as noted above, argue that they were merely implementing procedures directed by State law. Robinson, however, simply involved the application of existing constitutional law, as the opinion itself makes clear. No reasonable interpretation of that case would allow a conclusion that it establishes any new or more severe standard for due process. In its per curiam opinion, the Court specifically relied on the standard which had been set down twenty-five years earlier in Mullane v. Central Hanover Bank and Trust, supra, and has been followed ever since. Particularly apt here is the Court's mention of Walker v. Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed. 2d 178 (1956), which had relied on Mullane to hold that statutory provisions which required a lesser standard of notice did not relieve a party from the duty to provide direct notice to interested parties in condemnation proceedings where the names and addresses of those to be notified were known to defendants. See also Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962). Thus, even if defendants here did rely on statutory provisions to provide less than actual notice to plaintiff, such action does not constitute justification in circumstances such as those involved in this case and cannot, therefore, form the basis of a good faith defense.

■ Moreover, defendants here cannot even assert their compliance with state statutes as they have misinterpreted the applicable state law. They argue that Illinois requires only one letter to be sent to an individual and that the letter is to be sent to the address on file with the Secretary of State on the motor vehicle registration form. It is true that Section 4–205 of Chapter 95½, Ill. Rev.Stat., directs law enforcement agencies which tow and impound vehicles to check with the Secretary of State's office, among other sources, to determine the ownership of the vehicle being towed. It then provides:

The information determined from these record searches will be returned to the requesting law enforcement agency *for that agency's use in sending a notification by certified mail to the owner* or legally entitled person advising where the vehicle is held, requesting a disposition be made and setting forth public sale information. (emphasis supplied)

Nowhere does this statute contain a requirement that the notice be sent to the address listed with the Secretary of State or make any reference at all to where the notice is to be sent. Clearly, in most towing situations, which involve abandoned or illegally parked and unattended vehicles, the information obtained from the Secretary of State will be the *only* information the law enforcement agency has with regard to both the owner's name and address. Equally clearly, in situations involving the towing of arrestee's vehicles, once it has been determined that in fact, the arrestee is the owner of the vehicle, obviously the law enforcement agency itself has the best current information as to the owner's whereabouts and thus, should send notice to the place where it is most likely to reach him. To send a notice to an arrestee's address as reflected in the Secretary of State's records when he is known to be in jail is obviously ridiculous.

Consequently, defendants' assertion of good faith cannot be supported by Illinois statutes, by common sense or by any reasonable interpretation of constitutional law.

The failure to provide any opportunity to challenge the validity of the tow, and thus force plaintiff to face the imposition of a penalty or the loss of his property, is even less defensible. Significantly, defendants argue no justification for this procedure and we can find none. No officer of the law could seriously argue that to deprive someone of his property without any process of law whatsoever is anything but "patently unreasonable and without arguable support in logic or policy." Thus, we find that defendants' assertion of the defense of good faith is not sufficient to avoid liability in the facts of this case.

In sum, the notice sent to plaintiff informing him of the pending disposition of his automobile, and the failure to provide any opportunity to challenge the validity of the initial seizure of the car, constitute violations of plaintiff's rights to due process of law under the Fourteenth Amendment, for which defendants Conlisk and Nicholl are responsible. Consequently, plaintiff's motion for summary judgment as to liability is granted. An appropriate order will enter.

180

## APPENDIX

| DEPARTMENT SPECIAL ORDER | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| | 11 November 1969 | 12 November 1969 | 69~66 |

| SUBJECT | DISTRI-BUTION | AMENDS |
|---|---|---|
| IMMEDIATE TOWS | E* | |

| REFERENCE | RESCINDS |
|---|---|
| "Vehicle Tow and Abandoned Vehicle Procedures" insert, Field Reporting Manual | |

I.   PURPOSE

This order:

A.   reemphasizes the types of immediate tows which may be requested for motor vehicles.

B.   provides an additional procedure in regard to the immediate towing of prisoner's vehicles.

C.   requires the direct towing of vehicles to Pound #1 when the need for a police confidential check is readily apparent.

D.   discontinues the use of the Police Tow Sticker (CPD-11.256).

II.   TYPES OF IMMEDIATE TOWS

The following vehicles are classified as immediate tows and are defined by the "Vehicle Tow and Abandoned Vehicle Procedures" insert (Revised June 1966) to the Field Reporting Manual:

A.   Accident Vehicles

B.   Vehicles Held for Investigation or Seizure Under Article 36, Chapter 38 Illinois Revised Statutes

C.   Coroner's Case Vehicles

D.   Public Administrator's Case Vehicles

E.   Hazards and Obstructions to Traffic

F.   Recovered Stolen Vehicles

G.   Prisoner's Property

III.   DENIAL OF IMMEDIATE TOWS OF ABANDONED VEHICLES

Under no circumstances will immediate tows be requested for abandoned vehicles on private property or the public way unless the vehicle is stolen, wanted, or a hazard.  This includes abandoned vehicles which are classified as derelicts, i.e., motor, transmission, or major component parts are missing and the vehicle is less than $100 in value, or although it has its major component parts it is in such a state of disrepair as to be impractical to use as a motor vehicle and is less than $100 in value, and it is a car model manufactured 8 years previous to the current year.

A. A supervisor must approve the immediate towing of abandoned vehicles which an officer believes to be a hazard BEFORE the tow is requested.

B. Bureau of Street Traffic tow truck operators have been instructed to refuse to tow abandoned vehicles which are not hazards but have been called in as immediate tows.

C. In the case of abandoned vehicles which are on the street in such a manner as to constitute an immediate hazard of obstruction to the normal flow of traffic, tow truck operators will relocate the vehicles so they no longer are hazards and reclassify them for towing under the abandoned vehicle program.

IV. PRISONER'S PROPERTY IMMEDIATE TOWS

A. In all cases of prisoners' vehicles which require immediate tows, and especially where the offense is a minor traffic violation, the arresting officer will ascertain whether the prisoner will be let to bail or whether the prisoner will contact a relative or friend to pick up his vehicle PRIOR TO THE OFFICER REQUESTING AN IMMEDIATE TOW.

B. The arresting officer will notify the district desk sergeant when he has requested an immediate tow for a prisoner's vehicle. If the prisoner is then released on bond or makes arrangements for the pick-up of his vehicle, the desk sergeant will be responsible for canceling the immediate tow request by telephoning the Bureau of Street Traffic dispatching office (PAX 9-635 or Bell 8-8074). The desk sergeant will identify himself to the dispatcher by giving his name and star number.

V. POLICE CONFIDENTIAL CHECKS

When it is determined on the street that a police confidential check of a vehicle is necessary (e.g., VIN and license plates missing), the vehicle will be ordered towed directly to Pound #1 and not to the closest pound in order to eliminate vehicle transfers.

VI. DISCONTINUANCE OF POLICE TOW STICKER

Preparation of a Police Tow Sticker (CPD-11.256) and affixing it to immediate tow vehicles are discontinued. This order supercedes the instructions of previous directives and field reporting procedures regarding the use of the sticker.

Authenticated by: _____

James B. Conlisk, Jr.
Superintendent of Police

*All Patrol and Traffic Division personnel
Auto Theft Section personnel

178-69

VEHICLE TOW REPORT

INSTRUCTIONS

I. REPORTING

A. When to use the Vehicle Tow Report (CPD-11.129)

Use the Vehicle Tow Report to record the circumstances which justify the police officer's request to have a motor vehicle towed by a Department of Streets and Sanitation authorized tow truck.

The report will be made in duplicate for Department use; a third copy will be completed and given to the prisoner when an arrest has been effected which involves the vehicle, unless the prisoner is in control of a stolen vehicle. The Vehicle Tow Report has been designed to enable the officer effecting a tow to:

1. indicate abandoned or immediate tow classifications.
2. identify the vehicle, its owner, and/or its driver, whenever possible.
3. provide an inventory of the vehicle's condition at the time the tow is requested.
4. identify the police and city personnel involved in each towing operation.

B. Reporting a Vehicle Tow:

Notify the Communications Center of the investigation, and request a Hot Desk Check (unless ownership is established). When necessary, request that an immediate tow be made, stating the location, year, make, state license number, whether the vehicle will roll, and indicate priority for vehicles causing serious traffic hazards on the street. Immediate tows will not be requested for abandoned vehicles. Further reporting of particular tow investigations includes:

1. Abandoned vehicles on the public way. The beat officer who is responsible for on view investigations on his beat, will:

   a. affix the Police Notice (CPD-11.133) on the vehicle, indicating the date of intended vehicle removal (allow 7 days from the date the vehicle was apparently abandoned).
   b. forward the Vehicle Tow Report to the appropriate district abandoned vehicle officer.

2. Abandoned vehicles on public/private property parking lots and private property. The preliminary investigator who receives a public private parking complaint will:

   a. establish that the complainant is the owner, proprietor, or agent of the property involved.

   b. have the authorized complainant sign the completed Public/Private Parking Complaint (CPD-11.125) after it has been established that the property involved is an area or structure where parking is:

      (1) encouraged or authorized in which case the complainant will be informed that the Chicago Police will not authorize the towing of the vehicle but will accept the vehicle in an appropriate Police Auto Pound if the complainant has the vehicle towed at his expense. The original copy of the Public/Private Parking Complaint will be given to the complainant with instructions that this original be given to the tow truck operator to authorize acceptance of the vehicle into the Auto Pound, and the duplicate copy will be attached to the Completed Miscellaneous Exception Report (CPD-11.100) and forwarded to the appropriate district review officer.

      (2) not encouraged or authorized either voluntarily or by law to provide off-street parking facilities for tenants or employees of the owner, the policeman will authorize the towing of the vehicle to the Auto Pound as an abandoned vehicle and issue a "hang-on" citation if it is warranted. Complaints will be prepared in duplicate for each action when the situation requires a citation and a Vehicle Tow Report.

3. Immediate vehicle tows. The preliminary investigator requesting an immediate tow will:

   a. request such tows only as indicated in the Immediate Tow column on the Vehicle Tow Report. Immediate tows will not be requested for abandoned vehicles on private property unless the vehicle has been stolen, is wanted, or presents a serious hazard to the health and/or welfare of the community.

   b. remove personal property from the vehicle and complete the Property Inventory form (CPD-23.598). Never force open a locked glove compartment or trunk to obtain such property.

   c. remain at the scene to await the tow operator when, in his opinion, the:

      (1) condition or position of the vehicle may be considered hazardous to pedestrians or motorists.

      (2) value, popularity, or uniqueness of the vehicle, it's equipment, or contents may lead to further vandalism or theft.

   d. request the Communications Center to summon another officer to effect the tow when the conditions indicated in item I-B-3-c exist, but the preliminary officer must leave the scene to perform a more immediate (emergency) duty.

   e. have the tow operator sign the original Vehicle Tow Report when the officer remains at the scene; otherwise, leave the original either on the front seat, driver's side, or under a windshield wiper, when the vehicle cannot be opened, for the tow operator's signature and authority to tow the vehicle. No vehicle will be accepted at an Auto Pound without the tow truck operator's signature on the form.

C. Location of Auto Pounds:

1. Vehicles will be towed as follows:

| DISTRICT TOWED FROM | TO POUND | DISTRICT TOWED FROM | TO POUND |
|---|---|---|---|
| 8-10 | Auto Pound #1<br>3000 S. California Avenue<br>247-5078  PAX 9-479 | 13-14-15-16-17 | Auto Pound #5<br>4615 W. Division Street<br>626-6681 PAX 9-531 |
| 3-4-5-6-7 (Immediate tows only) | Auto Pound #2<br>650 West 83rd Street<br>846-0690  PAX 9-238 | 1-2-9-21 | Auto Pound #6<br>3120 South Wood Street<br>376-2440 PAX 9-368 |
| 18-19-20 | Auto Pound #3<br>2555 West Grand Avenue<br>252-3522  PAX 9-532 | 11-12 | Auto Pound #7<br>3201 S. Western Avenue<br>254-4343 PAX 9-327 |
| 3-4-5-6-7 (Abandoned vehicles only) | Auto Pound #4<br>1600 East 110th Street<br>221-7895  NO PAX | Loop area (Illegally parked vehicles only) | Central Auto Pound<br>11 West Wacker Drive<br>263-4737 PAX 9-464 |

NOTE: In all cases where a confidential check is requested or required in an investigation, the tow will be effected to: Auto Pound #1

2. Release of Vehicles

   1. Vehicles may be claimed at pounds 1 through 7 from 0800 to 2000 hours, seven days a week.

   2. Vehicles may be claimed at the Central Auto Pound 24 hours a day, seven days a week.

II.   FORM PREPARATION

Fill in the information or check the blocks in each numbered box: 1 through 3, either 4 or 5, 6 or 7 as required, and 8 through 40. When a numbered box does not apply, enter DNA in that box. The heading for each box is self-explanatory, however, the following information is given to guide in preliminary reporting.

Box 3.  R.D.  Number
Ordinarily, R.D. numbers are not obtained for incidents involving vehicle tows unless the tow involved is related to an incident which requires an R.D. number.

Boxes 4 and 5.  Abandoned Tow and Immediate Tow
Check the box that indicates the type of tow to be made.  It may be necessary to check more than one type of immediate tow for one incident.

The procedures to be used for the following Immediate Tow categories are:

1.   STOLEN OR WANTED VEHICLES - Upon recovery, request Communications to call for an evidence technician and the unit conducting the investigation when required by circumstances or directive.  Prepare the appropriate supplementary report.  Recovered stolen vehicles need not be towed if the owner is at the scene of recovery, displays proof of ownership, attests to receipt of vehicle by signing his name in the narrative of the case report, and the vehicle is not needed for investigation.

Recovering officers will not attempt to contact the owner.

2.   PRISONER'S--Vehicles which are under the control of a person when he is arrested will-be towed if:

   a.   the prisoner requests it.

   b.   the vehicle cannot be parked legally and continuously at the scene of arrest.  If necessary, the officer may park and secure the vehicle at the scene of arrest if consent is obtained from the person in control of the vehicle.

   c.   the vehicle cannot be turned over to another person authorized by the driver or owner.

   d.   the person in control of the vehicle will not agree to b. and c. above and he cannot legally or safely drive to the place of detention.

   e.   the vehicle is required for evidence or further investigation.

3.   HAZARD - A supervisor must approve the immediate towing of all vehicles which an officer believes to be a hazard before the tow is ordered.

Box 6.  Hold for investigation (not more than 5 days).
No motor vehicle will be held in any auto pound for more than 5 days unless held for the coronor, or approved by the Commanding Officer of the Automotive Pound Section Headquarters.

Box 7.  Extended hold for investigation (paper to follow).
To hold a vehicle for more than 5 days for further investigation or evidence, a Towed Vehicle Disposition (CPD-11.257) must be submitted.

Box 15.  V.I.N.
Insert the vehicle identification (serial) number.

Box 18.  Name: Owner; Prisoner.
Check owner-box if the owner is in control of the vehicle at the time of the incident; also check prisoner if the owner is arrested.

Box 23.  Name: Driver; Prisoner.
Check driver-box if the driver does not own the vehicle involved in an incident; also check prisoner if the driver is arrested.

Box 29.  Personal property in vehicle.
When the owner or driver of a vehicle which must be towed is unable to retain possession of any personal property in the vehicle and no relative or other authorized person is present to accept responsibility for the property, such property becomes the responsibility of the officer ordering the tow.  He will:

1.   place the property in a safe place in his vehicle.
2.   record the district in which the property will be kept, and describe the property in the remarks section (33).
3.   inventory the property on the Property Inventory form (CPD-23.598).
4.   contact the auto pound to which the vehicle was towed to furnish auto pound personnel with the property inventory number, and to obtain the auto pound inventory number of the vehicle for his Property Inventory form (cross indexing).
5.   send the personal property to the Evidence and Recovered Property Section according to existing procedure.

Box 34.
Whenever a vehicle is towed and the incident requires further investigation, the officer authorizing the tow will contact the follow-up investigators as soon as possible.