**Harry CHESTNUT et al.,**
**Plaintiffs-Appellants,**

v.

**CITY OF QUINCY, R. D. Edwards, Individually and as Chief of Police, City of Quincy, et al., Defendants-Appellees.**

**No. 74–2916.**

United States Court of Appeals,
Fifth Circuit.

May 21, 1975.

Kent Spriggs, Tallahassee, Fla., Jack Greenberg, New York City, for plaintiffs-appellants.

Drew Days, New York City, for N. A. A. C. P.

Alton M. Towles, Quincy, Fla., W. K. Whitfield, Tallahassee, Fla., for defendants-appellees.

Before GEWIN, DYER and ADAMS,* Circuit Judges.

PER CURIAM:

On October 10, 1970, Roberts, an officer of the City of Quincy, Florida, Department of Public Safety, while attempting to arrest Chestnut, shot and

---

* Of the Third Circuit, sitting by designation.

injured him. Another bullet grazed a bystander, Fisher. They brought suit under 42 U.S.C.A. § 1983 for damages against Roberts and Chief of Police Edwards. The district court entered a partial summary judgment in favor of Edwards and this appeal ensued.[1] We affirm.

The gravamen of the complaint against Edwards was that he had notice of the past culpable conduct of his subordinate Roberts and failed to prevent a recurrence of such misconduct, thus failing in his responsibility to provide for the personal safety of individual members of society.

The facts are undisputed. Some time long before Edwards became Chief of Police he had heard rumors that Roberts, while on duty, had shot and injured another person, but he could not recall the incident. After Edwards became Chief he found no reason to investigate what had purportedly occurred years before because there was no record of the shooting or even that a complaint with respect to it had ever been filed. During the five years after Edwards became Chief, and prior to the Chestnut shooting, Roberts was an average officer, with a good record. Chief Edwards knew of no instance of the use of excessive force by Roberts.

The first knowledge or information that Edwards had concerning the Chestnut shooting was after the fact. He did not cause, encourage, initiate, participate in, consent to, authorize, direct, command, or have any active control over anything to do with or leading up to the shooting.

It is self-evident that the Chief of Police and the officers under him had an affirmative duty to preserve law and order, and to protect the safety of persons in the community. In carrying out these duties it is equally clear that he may not invade, under color of law, a federal civil

right. Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492.

However, the remote and unrecorded incident in which Roberts was implicated before Edwards was Chief, and Edwards' non-action with respect to it years later when he became Chief was, under the circumstances, wholly insufficient to raise an inference creating an issue as to liability. The record simply does not disclose any other omissions sufficient to raise an issue concerning the measures taken by Edwards with respect to the duty assignments of Roberts. In the light of the undisputed facts the district court properly granted Edwards' motion for summary judgment.

Affirmed.

1. The complaint was cast in terms of a discriminatory pattern of law enforcement. The district court granted plaintiffs' partial motion for summary judgment enjoining the City of Quincy's racial police assignment policy. That ruling was not appealed.