**H. C. REMM, Jr., Individually and on behalf of all others similarly situated**

v.

**Moon LANDRIEU, Individually, and in his official capacity as Mayor of the City of New Orleans, et al.**

Civ. A. No. 76-3.

United States District Court, E. D. Louisiana.

Aug. 10, 1976.

Robert Hearin, New Orleans, La., for plaintiffs.

Philip S. Brooks, City Atty., New Orleans, La., for defendants.

## OPINION

SEAR, District Judge:

This is an individual and class action for injunctive and declaratory relief, as well as for damages, arising under 42 U.S.C. § 1983. Plaintiffs challenge the constitutionality of a New Orleans city towing ordinance.

On December 30, 1975 H. C. Remm, the individual plaintiff and class representative, discovered that his car was missing from the place where he had parked it. Remm contacted the New Orleans Police Department Auto Pound and learned that his automobile had been ticketed, towed, and impounded. Remm went to the Auto Pound, amicably demanding the return of his car. Personnel at the Auto Pound refused to release the car without payment of the towing fee and accrued storage charges.

On January 5, 1976, Remm filed this suit and, pursuant to an agreement with counsel for the defendants later that same day, his vehicle was surrendered to him without payment of the charges demanded at the Pound. Subsequently, plaintiff appeared in person at the Violations Bureau and protested the ticket that he had received, at which time a date of trial on the merits of the violation was set and he was required to furnish bond in the form of his American Automobile Association card. Counsel for all parties agreed to submit the issue of validity of the city ordinance to the court on memoranda, reserving the damage question for a later trial.

Remm's car was towed and impounded pursuant to New Orleans Code § 38–274 which reads in pertinent part:

"Any unoccupied vehicle of any kind or description whatever found violating any traffic law shall be removed immediately and impounded by any police officer or duly authorized person and shall only be surrendered to a duly identified owner thereof upon the payment of fifteen dollars ($15.00) hereby declared to be the towing fee covering such impounding. Such owner shall thereafter have the responsibility of separately disposing of the violation charge against him at the Violations Bureau or the court having jurisdiction over such violations.

.    .    .    .    .

"In addition to the fee for towing said vehicle there shall be an additional fee of three dollars ($3.00) for storage of vehicle for each twenty-four (24) hours or part thereof over and above twenty-four (24) hours from the time vehicle is towed to the Department Pound. Total storage fee not to exceed seventy-five dollars ($75.00)."

The ordinance makes no provision for giving notice to the owner that his car has been impounded, and the parties agree that in practice no notice is ever given, save attempts at notice prior to the sale or other disposition of the vehicle following a ninety-day storage period. The towing fee and storage charges are collected without giving the owner of the vehicle an opportunity for a hearing on the merits of the traffic violation and regardless of whether the owner intends to contest the traffic ticket. No vehicle is ordinarily surrendered to its owner without payment of these charges.

In practice, according to the stipulation of the parties, once the owner has paid the towing fee and accrued storage charges, he is given the parking ticket and allowed to redeem his vehicle. At this point the owner must choose whether to pay the ticket or contest it. If he chooses the former course, he may pay the fine by mail or in person at the Violations Bureau. If he chooses the latter course, he must appear at the Violations Bureau where a date for trial is set upon the owner posting bond to assure his subsequent appearance at the trial. The amount of the bond is the minimum fine applicable. It may be posted in the form of cash, check, money order, Louisiana Driver's License, or American Automobile Association card.

If at the trial the defendant is found guilty of the violation, he must pay the fine. If he is found not guilty of course no fine is due and the defendant receives a letter from the judge advising the Department of Finance of the verdict and the owner is instructed to take the letter to the Police Auto Pound and surrender it to personnel there. The letter from the judge along with another form of its own is sent by the Auto Pound to the Department of Finance where within thirty days a check is mailed to the owner returning the towing fee and any storage charges which have been paid.

Remm attacks two aspects of the ordinance as violative of the due process guarantee of the Fourteenth Amendment: (1) the initial towing and impoundment of vehicles without prior notice or the opportunity for a hearing, and (2) the assessment of towing fees and storage charges without prior notice or the opportunity for a hearing. We believe that the ordinance is unconstitutional in the second aspect for the reasons set forth below.

■  The purpose of ensuring fair decision making "is to protect [the individual's] use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property  .    .    .."[1] To implement this policy, procedural due process requires that before any individual is deprived of a significant property interest through governmental action he must be accorded notice of the impending proceeding and the opportunity to be heard at a meaningful time, prior to the deprivation.

1.  *Fuentes v. Shevin*, 1972, 407 U.S. 67, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556.

■ Ordinance 38–274 is enforced in two distinct phases: the towing phase and the fee collection phase. Under the terms of the ordinance an individual whose car is towed is deprived of two property interests: (1) an interest in access to and use of the impounded vehicle, and (2) an interest in the fees collected for towing and storage. The deprivation of the vehicle is initiated when the vehicle is towed and continues through the fee collection phase until the vehicle owner pays the fees. Deprivation of the fees takes place, of course, only at the second phase of enforcement. Both interests may be significant to the individual involved.[2] In each instance the deprivation may be merely temporary. Upon payment of the towing fee the vehicle is returned to its owner; and, if the owner is found to be not guilty of the traffic violation, he may eventually recover the towing fee itself. However, it is settled that even a temporary deprivation of property constitutes a "deprivation" within the meaning of the Fourteenth Amendment.[3]

■ In certain extraordinary circumstances an emergency may justify the seizure of property without due process of law. In *Fuentes v. Shevin*, 1972, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, the Supreme Court addressed itself to these exceptional situations setting forth three prerequisites to summary seizure:

1. The seizure must be necessary to secure an important governmental or general public interest.

2. There must be a special need for very prompt action.

3. The State must have kept strict control over its monopoly of legitimate force: the person initiating the seizure must have been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.[4]

■ We have little difficulty determining that a vehicle which appears to be illegally parked may be towed to the City Auto Pound without affording its owner prior notice and the opportunity for a hearing. In this situation the three requirements of *Fuentes* are satisfied. Firstly, the seizure is necessary to protect the recognized interest of local governments in regulating the use of their streets and other public places.[5] Secondly, public safety and convenience normally require the prompt removal of illegally parked vehicles. Thirdly, a city police officer must make some determination that a city traffic ordinance is being violated before the vehicle may be towed.

■ The constitutional defect however, appears at the second phase of enforcement. At that point, the seizure is no longer necessary to secure an important governmental or public interest. The interest at stake is the collection of the towing and storage fees from those guilty of traffic violations.[6] If it were necessary to violate constitutional rights to secure this interest, then by the same logic the city could re-

---

2. In *Bell v. Burson*, 1971, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90, the Supreme Court found that suspension of a driver's license amounted to deprivation of a significant property interest, stating, "Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood." *Id.* at 1589. If a license may not be suspended without due process because it may indirectly deprive an individual of his means of making a living, it follows that a direct deprivation of this means, *i. e.*, the automobile itself, is even less to be tolerated. See also *Graff v. Nicholl*, N.D.Ill. 1974, 370 F.Supp. 974, 981.

3. *Fuentes v. Shevin*, 1972, 407 U.S. 67, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556.

4. *Id.* at 2000.

5. *Walker v. City of Birmingham*, 1967, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210; *Cox v. New Hampshire*, 1941, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049.

6. It is well settled that mere administrative convenience is no justification for deprivation of property without due process. *Cleveland Board of Education v. Lafleur*, 1974, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52; *Vlandis v. Kline*, 1973, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63; *Bell v. Burson*, 1971, 402 U.S. 535, 91 S.Ct. 1568, 29 L.Ed.2d 90.

quire payment of the fine for the parking ticket in advance also. Instead, in that instance, the city has chosen the constitutional alternative of requiring those who wish to contest violations to post a bond, insuring their future appearance in court and guaranteeing that the fine will be paid if the defendant does not appear. We do not suggest that the revision of this ordinance must follow the same pattern of requiring a bond to cover towing fees and storage charges. The form of any revision is entirely at the discretion of the city council. However, the fact that this alternative exists convinces us that the "necessity" requirement of *Fuentes* is not met by this ordinance and therefore the due process violation cannot on this count be justified.

The second requirement of *Fuentes*, that there·be a need for very prompt action is also unsatisfied. Once the vehicle has been removed from the streets, public safety is no longer in jeopardy. Collection of towing fees and storage charges can await an adjudication without serious difficulty.

The third requirement, that the seizure be closely scrutinized by a government official who determines that, according to a narrowly drawn statute the seizure was necessary and justified, is also unfulfilled. Once a vehicle arrives at the Auto Pound the fees are collected from every owner without exception. Distinctions among the alleged violators are neither made nor attempted. There is, therefore, no careful supervision by a government official.

■ Although there seems to be no precedent squarely on point for our decision, we feel that the general requirements of due process mandate a finding of unconstitutionality in this case, and we draw further support from four recent decisions involving similar facts.

In *Seals v. Nicholl,* N.D.Ill.1973, 378 F.Supp. 172, plaintiff's automobile was seized as "prisoner's property". At that time, plaintiff Seals was in jail and no attempt was made to notify him there of the seizure. Instead, a notice was sent to his home informing him that his car had been impounded and that if he did not redeem his vehicle and pay towing and storage fees within fifteen days he would lose all right in the automobile. Seals of course never received that notice and in due course his car was destroyed.

■ The court found this procedure constitutionally infirm in two respects. Firstly, the notice given was inadequate since it was not reasonably calculated to reach the plaintiff.[7] Secondly, the court found that the failure to give plaintiff an opportunity to challenge the validity of the seizure was also a violation of due process.

"Neither state statutes, city ordinances, nor police department practices or regulations make any provision for the holding of any kind of hearing to determine whether there was a valid basis for the seizure and impoundment of a vehicle in the first place or the validity of requiring a party to pay towing and storage costs within fifteen days of the mailing of a notice or forfeit all claim to his car. Thus, even though an order to tow a car may be clearly invalid, as in the instant case, a citizen is forced to elect to pay or relinquish all rights in his property.

"Even if plaintiff Seals *had* received notice of the impending destruction of his car, and *had* been able to go to the pound within fifteen days with sufficient proof of ownership he would not, under present procedures, have been able to assert that the arresting officers had ordered his car towed improperly, and that therefore he should not be penalized by having to pay the towing and storage fees."[8]

Unlike the procedure in *Seals,* under the New Orleans ordinance an individual may

---

7. The standard of notice for due process was set in *Mullane v. Central Hanover Bank and Trust Co.,* 1950, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865. Although allowing for variation in the form notice may take, the Court held that any notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 657.

8. 378 F.Supp. at 177.

eventually challenge the seizure and recover the towing fees. Therefore, the deprivation is only temporary. However, we reiterate that a temporary deprivation of property without due process is no less constitutionally repugnant than a permanent one.[9]

Another case arising in the Northern District of Illinois, *Graff v. Nicholl*, N.D.Ill. 1974, 370 F.Supp. 974, further explored the limits of due process requirements. Plaintiff challenged a statute authorizing law enforcement agencies to seize and dispose of "abandoned" motor vehicles. Pursuant to the statute the police had placed a notice on plaintiff's windshield and subsequently towed and impounded his car. No other notice or opportunity for a hearing prior to the seizure was afforded.

That statute was held not to measure up to due process standards. Referring to the tripartite test of *Fuentes* and focusing particularly on the second prong of that test, the court pointed out that since vehicles were allowed to sit for seven days before being towed, there was obviously no pressing need for action the urgency of which could justify denial of due process. Under the terms of the statute individuals might recover their vehicles if they acted in time. But the Illinois court, citing *Fuentes*, also found that due process must be accorded even when a deprivation is merely temporary. The statute was also deemed unconstitutional because it provided no opportunity to challenge the validity of the abandonment presumption before paying the towing fee. The court made the interesting and practical observation that notice need not be accorded to owners who failed to maintain the identification data required by law. To this extent, due process could not be accorded since it would be almost impossible to determine who the owners were, and these owners could not reasonably complain of failure to notify them.

In *Stephens v. Tielsch*, W.D.Wash.1974, C.A. 73–73C2, an unpublished opinion, the court made the unelaborated declaration that:

" . . . the practice of assessing towing and storage fees against the owners or drivers of impounded vehicles, or of allowing such fees to be assessed by private towing companies which tow and store impounded vehicles at the request of the Seattle Police Department without notice and an opportunity for a prior hearing is barred by the due process clause of the Fourteenth Amendment

. . .

"[T]he practice of detaining impounded vehicles or allowing them to be detained by companies which tow and store impounded vehicles at the request of the Seattle Police Department, for purposes of securing payment of towing and storage fees, without notice and an opportunity for a prior hearing is barred by the due process clause of the Fourteenth Amendment . . . "

The ordinance which was challenged in *Stephens* authorized the towing of vehicles by private towing companies. Under the New Orleans ordinance, the New Orleans police department tows the vehicles and assesses the fees. In practice, however, this amounts to a distinction without a difference insofar as the second phase of enforcement is concerned, since the fees are collected automatically under either system. Thus, the control by a government official under the New Orleans ordinance does not cure the due process violation.

*Stypmann v. Nelder*, N.D.Cal.1974, C. 70–2312 AJZ,[10] is another unpublished decision involving a statutory scheme wherein vehicles were towed and impounded by private garagekeepers. The court in that case briefly observed that the initial seizure of illegally parked vehicles fits within the emergency exception outlined by *Fuentes*. But it held otherwise regarding the imposition of a garagekeepers lien:

"[The plaintiffs'] complaint is directed to the lien for towing and storage services which then attaches for the direct benefit not of the public, but the private garagekeeper. At this point, there is no

---

9. *Fuentes v. Shevin*, 1972, 407 U.S. 67, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556.

10. Now *sub judice* in the Ninth Circuit Court of Appeals.

longer any strict control by government officials operating under narrowly drawn statutes. Nor is there any special need for very prompt action. The threat to the public thoroughfares has been removed, and the vehicle is only being stored. Finally, the lien has not been shown to be directly necessary to the ticketing and removal procedures. Although there is no question that the lien is genuinely helpful in encouraging the private garage and tow operators to participate in the removal of abandoned and illegally parked vehicles from the public ways, it is clearly not essential to their participation. . . . The court notes that the City of San Francisco has taken some steps to ameliorate the undesirable effects of this statute on its own by providing for a hearing on the citation which results in the tow within five days, the city absorbing the costs of tows found improper. *However, even this procedure falls short of the prior notice and hearing that the constitution requires under these circumstances. This is not an 'extraordinary situation' where prior notice and hearing are not required."* [Emphasis supplied.]

When compared to the procedures challenged in the foregoing cases, the New Orleans ordinance also falls short of constitutional due process requirements. No notice or opportunity for a hearing is provided before the assessment of towing fees and storage charges. Individuals are deprived of a significant property interest and no extraordinary circumstances justify the denial of due process.

Defendants citation of *Steiner v. New Orleans*, 1931, 173 La. 275, 136 So. 596 is inapposite. Although in that case the Louisiana Supreme Court held a similar ordinance to be constitutional, *Steiner* constitutes a weak precedent in light of the radical developments in the theory of due process since 1931.[11]

---

 Defendants further argue that due process must be flexible. Flexibility is both proper and necessary in the form of notice and a hearing.[12] However, the total absence of these two fundamentals is not to be countenanced under the guise of elasticity. Due process must be accorded in every situation where it is possible unless the tripartite test of *Fuentes* is met.

Accordingly, we find that § 38–274 of the New Orleans Code is unconstitutional insofar as it authorizes the assessment of towing fees and storage charges without notice and the opportunity for a hearing.

---

11. The thrust of the court's decision was that the ordinance was reasonable and was a matter within the legislative power of the Commission council.

12. *Mitchell v. W. T. Grant Co.*, 1974, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406.