Elizabeth A. CRAIG, Plaintiff,

v.

Dale CARSON, Individually and as Sheriff of the Consolidated City of Jacksonville, Florida, Defendant.

No. 77–124–Civ–J–S.

United States District Court,
M. D. Florida,
Jacksonville, Division.

April 17, 1978.

William J. Sheppard, Jacksonville, Fla., for plaintiff.

William Lee Allen, Asst. Gen. Counsel, City of Jacksonville, Jacksonville, Fla., for defendant.

CHARLES R. SCOTT, District Judge.

## OPINION

This case is pending before the Court after a consolidated hearing on plaintiff's motion for a preliminary injunction and the merits of the case itself. Fed.R.Civ.P. 65(a)(2). Pursuant to Fed.R.Civ.P. 23(a) and (b)(2), the case was certified as a class action on April 3rd, 1978. The case is brought under 42 U.S.C. § 1983 to enforce a constitutional right guaranteed by the Fourteenth Amendment. The Court's jurisdiction is invoked under 28 U.S.C. § 1343.

### I. *Facts*

In the late afternoon of February 3, 1977, plaintiff's car stalled during a heavy rainstorm. With the help of a Navy officer who stopped, the car was pushed to the side of Mayport Road. The Navy officer then drove plaintiff home. Once home, plaintiff called the Duval County Sheriff's office and gave a description of her car, the license tag number, the location where it was left, and explained the circumstances under which it was left. She indicated her intention to remove the car as soon as possible. The next morning, February 4, at around 8:00 o'clock A. M. Officer Richard Terrance St. Johns of the Duval County Sheriff's office saw plaintiff's car, and two others, parked along Mayport Road. He radioed the license tag numbers to his office which in turn relayed the information to the National Crime Information Center ('NCIC') computer which checked to see if any of the cars had been stolen. None had. Because plaintiff's car appeared to have been there overnight, the officer put a twenty-four removal notice on the windshield.

Later that same morning, two friends of plaintiff tried unsuccessfully to repair her

car. That same night, another friend tried to repair the car and discovered that the distributor coil was missing.

On Saturday morning, February 5, 1978, Officer St. Johns returned to the area. The other two cars had been removed, but plaintiff's car was still there. He radioed his office again for a dispatcher to send the tow truck, and to obtain the owner's name and address through the vehicle registration information stored in the NCIC computer. For unexplained reasons, he was unable to obtain the NCIC vehicle registration information. Officer St. Johns testified, however, that he could just as easily have made a computer search for the vehicle registration information a day earlier when he made a similar NCIC computer search to determine if the vehicle was stolen. The officer then looked in the car and saw a bank deposit slip with plaintiff's name on it and an address at Neptune Beach, Florida. Later the officer went to that address and attempted to locate plaintiff. Two boys there said that plaintiff did not live there any more. That address was not the address on plaintiff's vehicle registration. After the tow truck arrived, plaintiff's car was towed to a service station parking lot in Neptune Beach.

Meanwhile, plaintiff returned and found her car gone. She called the Sheriff's Department twice and was unable to locate her car. Eventually she learned that the car was at the service station lot in Neptune Beach.

Monday morning, February 7, 1977, plaintiff went to the lot where her car had been towed. When she sought access to her car, she was refused unless she paid a $25.00 towing charge and storage charges accumulating at the rate of $3.00 per day. Being unable to pay the charges, plaintiff was denied access to her car.

The next day, a letter was received by plaintiff's mother at the address on plaintiff's vehicle registration. The letter, from the Duval County Sheriff's Department, notified plaintiff that her car could be redeemed by paying $25.00 towing charge plus storage charges in the amount of $3.00 per day; but that after sixty days her interest in the car would be forfeited. The vehicle registration address is plaintiff's permanent address. Because she was unable to pay the assessed charges, plaintiff was without access to, or use of, her car from February 5, 1977, until February 17, 1977, when defendant ordered plaintiff's car released pending the outcome of this case.

## II. *The Ordinances*

Under several different ordinances, the Sheriff's Department is authorized to make an initial seizure of a motor vehicle, and to remove and tow it to a place of impoundment. Motor vehicles may be removed and impounded if they are left unattended on a public way for more than twenty-four hours [1]; where an emergency or public safety requires [2]; after appropriate notice [3]; when the motor vehicle is unlawfully parked [4]; where four or more parking violations applicable to the motor vehicle have been outstanding for more than fifteen days [5]; and when a motor vehicle has been captured, lost, abandoned, or stolen.[6]

1. Jacksonville Municipal Ordinance § 312.634 provides:
 Unattended Vehicles. No motor vehicle shall be left unattended on the public ways of Jacksonville for longer than twenty-four hours, and the Sheriff is authorized to impound and store such unattended vehicles where emergency and the public safety require it, or after notice of the violation citation upon said vehicle, or by other appropriate notice to the owner of such violation. Violation of this section shall constitute a class A offense.
2. See note 1 *supra*.
3. See note 1 *supra*.
4. Jacksonville Municipal Ordinance § 312.-1101(a)(1) provides:
 Any motor vehicle unlawfully parked in violation of any provision of this Code which prohibits the parking of vehicles at the place or time where the impounded motor vehicle is found;
5. Jacksonville Municipal Ordinance § 312.-1101(a)(2) provides:
 Any motor vehicle with respect to which four or more citations for violations of a parking ordinance of the City have been outstanding for more than fifteen days each.
6. Jacksonville Municipal Ordinance § 211.1102 provides:

Once a vehicle has been seized, towed, and removed to a place of impoundment, specific city ordinances authorize the retention of the vehicle and a repossession of it only upon the fulfillment of certain conditions. The assessment of charges for towing the vehicle and storing it is authorized.[7] The prepayment of those charges before release of the vehicle is required.[8] The prepayment of any applicable parking fines or violations before release of the vehicle is required.[9] A lien against the vehicle for the charges assessed is created.[10] Forfeiture of the vehicle after sixty days' impoundment, for the purpose of paying the outstanding charges and foreclosing the lien for them, is authorized.[11]

## III. *Issues and Law*

The first issue raised by plaintiff in this case is whether the Jacksonville city ordinances authorizing the seizure and removal of motor vehicles to a place of impoundment violate the due process clause of the Fourteenth Amendment by depriving a person of property without the safeguards of procedural due process. The second issue raised by plaintiff is whether the Jacksonville city ordinances that authorize the re-

Impoundment of Vehicles. The Sheriff is authorized to impound and maintain a storage place for all captured, lost, abandoned or stolen motor vehicles, and to dispose of those vehicles in the manner provided by law.

7. Jacksonville Municipal Ordinance § 312.-1103(a) provides:

Impounded Vehicles. Within sixty days from the date any such motor vehicle is seized or taken into possession by the Sheriff, the rightful owner shall be entitled to regain possession thereof upon proof of ownership, and upon payment of storage charges and costs of keeping same, and upon additional payment of all fines and costs applicable to citations for violation of parking ordinances of the City, to the Sheriff for transmittal to the Clerk of the Municipal Court, or, in lieu of such latter payment, upon the furnishing of a statement of the Clerk of the Municipal Court that all such citations have been disposed of. As soon as practicable after such motor vehicle is so reduced to possession and during said period of sixty days, the Sheriff may make diligent effort to ascertain the owner of same and anyone claiming a lien thereon, and to notify the owner and any lienholder that such motor vehicle is being held and retained under the provisions of this part.

§ 312.1106 provides:
Disposition of Proceeds Derived From Sale. All storage charges and costs of keeping such motor vehicles, and all proceeds derived from any public sale thereof, shall be collected by the Sheriff, who shall promptly and within three days make a report thereof to the Director of Finance and deliver such funds to the Tax Collector, taking a receipt thereof and filing same together with a duplicate copy of the report to the Director of Finance with the records in his office. The report to the Director of Finance in case of the public sale of any such motor vehicle shall include the expenses incurred incident to such sale of same.

§ 312.1108 provides:
Payment of Fees to Wrecker Service. In all instances in which the services of any wrecker service must be utilized by the Sheriff while impounding wrecked, lost, or stolen automobiles, delivery to the bona fide owner or to the successful bidder at auction shall be subject to payment by either, whatever the cost may be, of the cost of such wrecker service.

8. Jacksonville Municipal Ordinances §§ 312.-1103(a) and 312.1108. See note 7 *supra.*

9. Jacksonville Municipal Ordinance § 312.-1103(a). See note 7 *supra.*

10. Jacksonville Municipal Ordinance § 312.-1104 provides:

Storage Charges to Constitute Lien; Notice of Public Sale. The owner of any such motor vehicle, before being restored said property, shall pay the amounts required by the preceding section, and in default of payment within sixty days from the date such motor vehicle is seized or taken into possession by the Sheriff, such motor vehicle shall be sold at public sale to the highest and best bidder for cash to satisfy said lien. Notice of such sale shall be given in writing to the owner and any lienholder, if known, and by publication one time in a daily newspaper of general circulation in the City, at least ten days prior to the date of such sale. Such publication may be made before the termination of said sixty days for a sale thereafter. The time and place of such sales shall be fixed by the Sheriff, who shall give the notices thereof and conduct the same in the name of and on behalf of the City.

11. Jacksonville Municipal Ordinances §§ 312.-1104, 312.1106, 312.1108. See notes 7 and 10 *supra.*

tention of impounded motor vehicles, and the repossession of those vehicles only upon the satisfaction of specific conditions, violate the Fourteenth Amendment due process clause by depriving a person of property without the safeguards of procedural due process.

■ There are four essential elements which must be met before the Due Process Clause of the Fourteenth Amendment applies. In order, therefore, to be guaranteed the safeguards of the Due Process Clause, one must inquire initially whether those four essential elements are present.[12] First, a person must have a recognized liberty or property interest at stake. *Smith v. Organization of Foster Families,* 431 U.S. 816, 837, 97 S.Ct. 2094, 2106, 53 L.Ed.2d 14, 31 (1977); *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18, 31 (1976); *Siler v. Brady Indep. School Dist.,* 553 F.2d 385, 387 (5th Cir. 1977); *Stewart v. Bailey,* 556 F.2d 281, 285 (5th Cir. 1977); *Tanner v. McCall,* 441 F.Supp. 503, 506 (M.D.Fla. 1977); *Schrank v. Bliss,* 412 F.Supp. 28, 41 (M.D.Fla.1976). Second, even a temporary deprivation of that liberty or property will satisfy the required element of the Due Process Clause. *North Ga. Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751, 757 (1975); *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556, 573 (1972); *Stypmann v. San Francisco,* 557 F.2d 1338, 1342 (9th Cir. 1977). Third, there must be some form of state action which deprives an individual of his liberty or property. Fourth, there must be some legitimate governmental or public reason asserted for depriving an individual of his liberty or property.

■ Once those elements of the Due Process Clause are present, the next step in the analysis is to determine what kind of procedural due process safeguards is required in the particular context. *Smith v. Organization of Foster Families,* 431 U.S. at 847, 97 S.Ct. at 2111, 53 L.Ed.2d at 37. The right to due process is absolute, *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 901, 47 L.Ed.2d at 32; but the kind of due process varies in different factual situations. *Id.* at 334, 96 S.Ct. at 902, 47 L.Ed.2d at 33. *See also Smith v. Organization of Foster Families,* 431 U.S. at 847, 97 S.Ct. at 2111, 53 L.Ed.2d at 37. Nonetheless, the fundamental safeguards of procedural due process must be real, and present. There are basic, elementary safeguards of procedural due process, which while having varying forms in different contexts, must be present. The absence of some form of those basic protections or procedural due process is a fatal deficiency. *North Ga. Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. at 607, 95 S.Ct. at 722, 42 L.Ed.2d at 757. The fundamental, indispensable protections of procedural due process are (1) a hearing (2) before an impartial decision-maker, after (3) adequate notice of the reason for the deprivation, with (4) an opportunity for the individual to present his case. *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 901, 47 L.Ed.2d at 32; *Boehning*

---

**12.** Since the scope of those rights redressable under 42 U.S.C. § 1983 is identical to the "center piece" of constitutional rights guaranteed by the Fourteenth Amendment, *Mitchum v. Foster,* 407 U.S. 225, 238–39, 92 S.Ct. 2151, 2159–60, 32 L.Ed.2d 705, 715 (1972); *Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492, 496 (1961); *Golden v. Biscayne Bay Yacht Club,* 530 F.2d 16, 18 (5th Cir. 1976) (*en banc*) rev'g 521 F.2d 344 (5th Cir. 1975) and 370 F.Supp. 1038 (S.D.Fla.1973); *Local 1954, Hanover Township Feder. of Teachers v. Hanover Comm. School Corp.,* 457 F.2d 456, 461 (1972) (Stevens, J.), the necessary elements for a § 1983 claim are highly similar to the second and third elements of the Fourteenth Amendment Due Process Clause. Those two necessary elements are (1) conduct by a defendant under the authority of state law, "a valid 42 U.S.C. § 1983 claim requires a showing of state action," *Morgan v. Odem,* 552 F.2d 147, 148 (5th Cir. 1977); and (2) deprivation of a plaintiff's constitutional rights by that conduct. *Sullivan v. Brown,* 544 F.2d 279, 284 (6th Cir. 1976); *Gearheart v. Federal Reserve Bank,* 516 F.2d 353, 354 (6th Cir. 1975), *cert. denied* 423 U.S. 927, 96 S.Ct. 274, 46 L.Ed.2d 254 (1976); *Stene v. Beresford School Dist.,* 425 F.Supp. 1389, 1390 (D.S.D.1977); *Brainerd v. Potratz,* 421 F.Supp. 836, 840 (N.D.Ill.1976); *Baron v. Carson,* 410 F.Supp. 299, 301 (N.D.Ill.1976); *Chase v. McMasters,* 405 F.Supp. 1297, 1299 (D.N.D.1975).

*v. Indiana Employees Ass'n,* 423 U.S. 6, 7 n. *, 96 S.Ct. 168, 46 L.Ed.2d 148, 150 n. * (1975); *North Ga. Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. at 606, 95 S.Ct. at 722, 42 L.Ed.2d at 757; *Fuentes v. Shevin,* 407 U.S. at 80, 92 S.Ct. at 1994, 32 L.Ed.2d at 569; *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865, 873 (1950).

▆▆▆ "Procedural due process" is a fluid, open-ended term, and what satisfies the basic guarantees of that term must be determined by balancing three factors: (1) the particular kind of private liberty or property interest at stake; (2) the risk of a wrongful and erroneous deprivation of that interest; and (3) the public or governmental interest involved. *Carey v. Piphus,* —— U.S. ——, ——, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252, —— (1978); *Smith v. Organization of Foster Families,* 431 U.S. at 848, 97 S.Ct. at 2112, 53 L.Ed.2d at 38; *Dixon v. Love,* 52 L.Ed.2d 172, 180, 431 U.S. 105, 112, 97 S.Ct. 1723, 1727 (1977); *Mathews v. Eldridge,* 424 U.S. at 334–35, 96 S.Ct. at 902–03, 47 L.Ed.2d at 33. Obviously, procedural due process is flexible and provides the fundamental protection in a form that is appropriate to the particular situation and nature of each case. *Carey v. Piphus,* —— U.S. at ——, 98 S.Ct. at 1050, 55 L.Ed.2d at ——; *Smith v. Organization of Foster Families,* 431 U.S. at 847–848, 97 S.Ct. at 2111–2112, 53 L.Ed.2d at 37–38; *Mathews v. Eldridge,* 424 U.S. at 334, 96 S.Ct. at 902, 47 L.Ed.2d at 33; *Fuentes v. Shevin,* 407 U.S. at 82, 92 S.Ct. at 1995, 32 L.Ed.2d at 571, *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873. What is constant and identifiable in every varying factual situation where different forms of the basic procedural due process safeguards appear is that they are meaningful and reasonable. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873. Hence, both the hearing provided, whether provided before or promptly after the deprivation, and the notice of that hearing, must be reasonable and meaningful in the time and manner in which they occur. This means that the hearing con-

cerning the deprivation, whether before or after the initial deprivation, must be before the decision has become irrevocable and uncontestable. *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 901, 47 L.Ed.2d at 32. In other words, there must be an opportunity for the individual whose liberty or property interest is affected to challenge the deprivation and to present his own case on the matter. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. at 313, 70 S.Ct. at 656, 94 L.Ed. at 872. The notice of the deprivation and of the opportunity for a hearing to contest it must be adequate to inform the affected individual, and it must occur (1) either before or swiftly after the deprivation, and (2) within a reasonable time to alert the individual to the hearing provided. *Id.* at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.

Plaintiff challenges the towing of her automobile from Mayport Road, where she left it stalled, without effective notice of the intention to tow it, and an opportunity to contest the towing, before it occurred. To the extent that the municipal ordinances authorize towing of automobiles, like plaintiff's, without prior notice or hearing, she contends that the ordinances violate the Fourteenth Amendment and are therefore unconstitutional. To be sure, the wide range of undifferentiated circumstances in which the Sheriff's Department is authorized to remove private automobiles by towing, without prior notice and hearing, is constitutionally doubtful. Some courts have held that the failure to distinguish between different situational settings that necessitate removal of automobiles and the absence of appropriate, procedural due process requirements for each of those settings, are precisely the defects that cause such ordinances to violate the Fourteenth Amendment. *Tedeschi v. Blackwood,* 410 F.Supp. 34, 44 (D.Conn.1976); *Graff v. Nicholl,* 370 F.Supp. 974, 983–85, 986 (N.D.Ill. 1974). The facts of the present case do not even suggest any urgency or extraordinary circumstances that would amount to an emergency or a threat to public safety. Furthermore, other courts have suggested that, even without discriminating distinc-

tions, ordinances which allow removal of private automobiles by towing must also provide swift, post-seizure, procedural due process guarantees. *Stypmann v. San Francisco,* 557 F.2d at 1343–44; *Remm v. Landrieu,* 418 F.Supp. 542, 544–45 (E.D.La. 1976); *Seals v. Nicholl,* 378 F.Supp. 172, 177, 178 (N.D.Ill.1973).

■ Nevertheless, the facts of the present case do not raise a concrete issue that is ripe for a ruling concerning lack of prior notice and hearing in the city towing ordinances. At trial, plaintiff testified on cross-examination that she would have removed her car herself if she had been able to afford to do so, and that she was concerned about leaving her car with the possibility of it being an object of vandalism. By her own admissions, then, plaintiff's attack upon the constitutionality of the city ordinances that authorized the removal and towing of her automobile has become moot. There is no genuine dispute by plaintiff about the official conduct, pursuant to the legal authority of the ordinances, that resulted in the removal of her car. She conceded that such a removal was from a situation about which she was personally concerned, and was a course of conduct that she would have taken herself, but for her financial disability. Plaintiff has abandoned her attack upon the city towing ordinances. As a result, she is not an appropriate representative for a class of plaintiffs who might challenge the city ordinances that authorize undifferentiated towing of private automobiles without any prior notice and hearing. The Court holds that there is no viable case or controversy to adjudicate in this case concerning the authority of the Sheriff's Department to remove and tow private automobiles without prior notice and hearing.

Once a person's car has been towed, however, other municipal ordinances affect the owner's use of, and right to, his automobile. Charges for the towing and storage of the car are automatically assessed against the owner. A lien is created against the car for those charges. Prepayment of the charges is necessary or the car will not be released.

If the car is not redeemed by paying those charges within sixty days after its impoundment, it is subject to forfeiture and sale in order to foreclose the lien and satisfy the amount of charges assessed. Apart from bringing an independent lawsuit, like the present one, to challenge the legal effect of the ordinances, an individual has no opportunity to contest either (1) the legal consequences of the ordinances to his automobile, or (2) the validity of the tow.

■ Plaintiff, and the class that she represents, have two interests at stake in these ordinances: the impounded cars and the required charges. *Remm v. Landrieu,* 418 F.Supp. 542, 545 (E.D.La.1976). *Cf. Bunkley v. Watkins,* 567 F.2d 304 (5th Cir. 1978). The deprivation is more than temporary. Without the likelihood of any effective notice, and without any opportunity to contest the retention of the car and assessment of the charges, the deprivation of them is virtually final and irrebuttable. *Seals v. Nicholl,* 378 F.Supp. 172, 177, 179 (M.D.Ill.1973). The removal of the automobiles at the summons and direction of the Sheriff's Department is authorized by city ordinances. The retention of those cars, along with the assessment of charges, creation of a lien for the charges, and foreclosure of the lien by forfeiture of the cars, are all authorized by city ordinances. There is no question, therefore, that there is state action involved in the deprivation. *Tedeschi v. Blackwood,* 410 F.Supp. at 41. Finally, the public, governmental interests at stake in this case are to prevent traffic hazards to public safety, to ensure compliance with city parking ordinances, and to prevent the city's traffic arteries from becoming cluttered by abandoned or stolen automobiles.

The reasoning in several similar decisions is persuasive concerning the present case. In *Stypmann v. San Francisco,* 557 F.2d 1338 (9th Cir. 1977), the plaintiffs brought a class action challenging the constitutionality of a state statute and city ordinance. The result of the statute and ordinance was to authorize the towing of automobiles without notice and hearing and the creation

of a statutory lien against the cars for the towing and storage charges. The only issue in the case was about the kind of due process necessary when private automobiles are towed, and storage and towing charges are assessed. *Id.* at 1342. The particular statute and ordinance challenged provided for a hearing on the lawfulness of the towing within five days after the seizure and removal of an automobile. *Id.* at 1344. During that time, however, there were no due process protections for car owners. Either they had to pay in advance the towing and storage charges assessed, or they could not recover their automobiles. *Id.* at 1343. The ordinance and statute were, in other words, totally devoid of interim due process safeguards, as well as any provisions to mitigate the owners' losses if the seizure and retention of their cars should prove to be unjustified. *Id.* Yet, the validity of the retention of the car, assessment of the charges, and creation of a lien against the car, all depended upon the legality of the original removal of the car. *Id.* at n. 18. The Ninth Circuit Court of Appeals examined the conflicting interests at stake.

> The private interest in the uninterrupted use of an automobile is substantial. A person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed. *Id.* at 1342–43.

The public, governmental interests, were also substantial, however: the removal of cars from streets and highways, and the security for the costs of the removal and retention of those cars. *Id.* at 1343. Nonetheless, for the purpose of determining when and what kind of procedural due process should be provided once automobiles are towed, the Court of Appeals found that "neither of these [public, governmental] interests [are] at stake here. The only government interest at stake is that of avoiding the inconvenience and expense of a reasonably prompt hearing to establish probable cause for the continued detention of the vehicle." *Id.* Adhering to the Supreme Court's reasoning in *Mathews v. Eldridge*, 424 U.S. at 347–48, 96 S.Ct. at 908–

09, 47 L.Ed.2d at 41, the Court of Appeals noted that considerations of convenience and costs, while relevant, are never controlling factors when determining the need and right to procedural due process safeguards. *Id.* at n. 15.

*Remm v. Landrieu*, 418 F.Supp. 542 (E.D. La.1976), is another case that was similar to the present one. The day before New Year's Eve, 1975, the plaintiff discovered that his car was missing from where he parked it. The New Orleans' police had ticketed, towed, and impounded the car. When he sought return of it, he was refused unless he paid towing and storage charges that were assessed against him under the city ordinance. After he filed his lawsuit in federal district court on January 5, 1976, his car was released without prepayment of the required charges, in accordance with an agreement reached by his counsel and counsel for the defendants. He then protested the ticket's citation at the violations bureau and his AAA card was furnished as bond until trial on the merits of the violation. The issue in the federal case was the validity of the city ordinance authorizing towing, impoundment, and assessment of charges against an automobile owner. The plaintiff challenged the ordinance in two ways: (1) the initial towing with a prior notice or hearing concerning it, and (2) the assessment of towing and storage fees without prior notice and hearing about them. The district court based its decision on the second challenge, holding that insofar as the ordinance authorized the assessment of towing and storage charges without prior notice and hearing, it was unconstitutional. *Id.* at 544, 548. The New Orleans ordinance, however, did provide for an eventual hearing after payment of the assessed charges and release of the owner's car, making the deprivation temporary, but not absolutely final. It was in the ordinance's requirement that the assessed towing and storage charges be prepaid, before return of an automobile to its owner, that the constitutional defect lay. *Id.* at 545. The court concluded that there was no reasonable justification for requiring the pre-

payment of the charges. The public interest did not require such, else prepayment of parking tickets would be required, instead of permitting a bond to be posted. *Id.* at 546. Because there were other reasonable alternatives available to ensure that towing and storage charges would be collected where justified, the only justification which the defendants could offer for depriving an owner of his car without due process was administrative convenience. The court rejected that reason. *Id.* at 545 n. 6.

Finally, a three-judge, federal district court in *Tedeschi v. Blackwood*, 410 F.Supp. 34 (D.Conn.1976), invalidated a state statute similar to the ordinance in the present case. The statute

. . . empowered a police officer or motor vehicle inspector who determined that a motor vehicle had been abandoned, unregistered, or dangerously parked to have the vehicle towed to a garage for storage. All towing and storage charges incurred became a lien on the vehicle which in time could be foreclosed by the garage through its sale of the vehicle. The statute did not, however, afford a right to a hearing to a person wishing to contest the application of either its towing or its lien provisions to its vehicle. *Brooks v. Flagg Bros., Inc.*, 553 F.2d 764, 773 (2nd Cir. 1977).

The district court held that, because the statute authorized the towing, retention, and sale of private automobiles to satisfy liens which the statute created against them, without any provision whatever for a hearing concerning the legitimacy of any of those acts either before or after their occurrence, the statute deprived owners of their property without due process of law and violated the Fourteenth Amendment. *Tedeschi v. Blackwood*, 410 F.Supp. at 45. The failure of the statute to distinguish between different situations in which the removal of automobiles was required, and to provide varying kinds of procedural due process protection for each of those situations, was the fatal constitutional deficiency. *Id.* at 44–45. If a person had the appropriate kind of notice and hearing concerning the actual or intended towing of his automobile, then, in the event that he prevailed in opposing the removal of his car, he would not be liable for the assessed charges. *Id.* at 45 n. 17. The court held that the plaintiff, who had recovered his car and released his damage claim prior to the hearing in the case, was nonetheless a proper representative of the certified class of plaintiffs for purposes of injunctive and declaratory relief and the case had not become altogether moot. *Id.* at 38–40.

The principles distilled from those decisions guide the Court's ruling in this case. The ordinances authorizing the assessment of towing and storage charges, the requirement that they be prepaid before return of the owner's car, the creation of a lien against the car for those charges, and the foreclosure of the lien and forfeiture of the car after sixty days, are utterly devoid of any procedural due process safeguards. The ordinances confront the owner of a car that has been towed and stored with the proverbial Hobson's choice: he must pay the charges assessed against him or forfeit his car. Under either alternative, the owner is compelled to relinquish his personal property, whether his car or his money, without an opportunity to dispute the loss. *See Seals v. Nicholl*, 378 F.Supp. at 177.

 The importance of a person's interest in his car is obvious in today's society, for purposes of earning a living, conducting one's business affairs, and carrying on the majority of one's activities. *See Stypmann v. San Francisco*, 557 F.2d at 1342–43; *Holladay v. Roberts*, 425 F.Supp. 61, 66 n. 6 (N.D.Miss.1977). Similarly, one's interest in being free from unjustified payments of charges and fees is equally obvious. The governmental interest in public safety and uncongested public streets and highways cannot justify withholding a person's car, or assessing him for towing and storage charges, without any opportunity to determine the validity of either. The fact that the procedure under the ordinances might be administratively more convenient, expeditious, and inexpensive, is no excuse or justification for the absence of procedural due process protections.

While procedural due process is flexible and variable in different situations, the complete absence of any due process at all cannot be justified under the guise of flexibility. *Stypmann v. San Francisco*, 557 F.2d at 1343; *Remm v. Landrieu*, 418 F.Supp. at 548 n. 12; *Tedeschi v. Blackwood*, 410 F.Supp. at 45. This is not a case where the ordinances involved might be appliedly unconstitutional, and could be construed to apply in a different way so as to provide fundamental procedural due process. *See, e. g., Lee v. Thornton*, 538 F.2d 27, 31 (2nd Cir. 1976). The non-existence of any form of procedural due process in the ordinances leaves them absolutely unconstitutional on their face. Although one ordinance states that the sheriff shall "make diligent effort to ascertain the owner" of an impounded automobile and notify him "as soon as practicable" after impoundment, under the facts of this case that kind of notice is not constitutionally adequate. It is not meaningful, because it is not reasonably calculated to inform the owner of the fact that his car has been removed and where it is stored. The testimony in this case indicates that immediately upon towing, or even prior to the towing, the owner's identity and address from his vehicle registration can be rapidly and readily obtained by an NCIC computer search. Where the officials authorized to seize and retain a person's automobile are the same ones who have easy access to the readily available information concerning the owner's identity and address, the failure to use that information to notify the owner, and the use of some other notice, is not sufficient to satisfy the Due Process Clause of the Constitution, and does not make good sense. *Robinson v. Hanrahan*, 409 U.S. 38, 39–40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47, 49 (1972); *Seals v. Nicholl*, 378 F.Supp. at 177. Only an immediate, individual notice, at a person's motor vehicle registration address, can be reasonably likely to apprise the owner of the fact and location of his car's impoundment. *Holladay v. Roberts*, 425 F.Supp. at 65.

Much more serious than the lack of an adequate, meaningful notice to an owner that his car has been towed and stored, is the absence of any fair hearing with an opportunity to contest the removal and impoundment. Even assuming that an owner eventually does receive notice of the fact and location of his car's impoundment, the notice is merely of a *fait accompli.* Under the ordinances, the impoundment of the car, assessment of the charges against the owner, retention of the car until prepayment of those charges, the creation of a lien against the car for those charges, and the automatic sixty-day forfeiture of the car to foreclose the lien, are all final, unilateral, irrebuttable, and unalterable actions. The Court has a duty under the Constitution to see that its pre-eminent guarantees are faithfully honored. These ordinances, with their failure to afford any opportunity to contest the lawfulness of all of these legal results, neither stand up under the Court's scrutiny nor measure up to the constitutional standard.

Some form of fair and impartial hearing, at which an owner is provided an opportunity to challenge the lawfulness of removing his car, assessing charges against him and creating a lien against his car for those charges, must be provided within a prompt and reasonable time period. In addition, no legitimate governmental interest is served by, or justifies, the severe loss and hardship that withholding an owner's car from him imposes. Consequently, after the immediate and individual notice that is reasonably adequate to inform a motor vehicle owner that his car has been towed and stored, once the owner requests access to, and possession of, his automobile, it must be returned to him. Whatever form of hearing is to be provided, and whatever form of security for the owner's presence and for the charges assessed that might be chosen, is left to the legitimate legislative prerogative of the city council. The Court will not meddle in that body's legislative activities by attempting to dictate the form of hearing and security. The Court simply notes that, after balancing the important private interests involved with the governmental public interests, the city council should be able to quickly re-

spond with corrective ordinances that supply the missing constitutional due process guarantees. *Fishman v. Schaffer,* 418 F.Supp. 613, 620 n. 9 (D.Conn.1976); *Tedeschi v. Blackwood,* 410 F.Supp. at 46. Consequently, the Court declares the city ordinances of Jacksonville, insofar as they authorize impoundment of a person's car, assessment of charges against him, retention of the car until prepayment of those charges, creation of a lien against the car for those charges, and an automatic forfeiture of the car in order to forclose the lien within sixty days after impoundment, to be unconstitutional because of their violation of the Fourteenth Amendment Due Process Clause. Accordingly, the Court will enjoin any further enforcement of those constitutionally defective ordinances.

Plaintiff's request for damages, however, is a different matter. The belief that "damages should be presumed to flow from every deprivation of procedural due process" has been recently rejected by the Supreme Court. *Carey v. Piphus,* —— U.S. at ——, 98 S.Ct. at 1052, 55 L.Ed.2d at 264. Injury cannot be presumed to occur without "proof on the issue". *Id.* Although plaintiff seeks damages in the amount of $25.00 per day for the twelve days that she was without her car, there has been no evidence to show any actual damages suffered by plaintiff, much less $25.00 per day. Consequently, adhering to the Supreme Court's decision in *Carey v. Piphus, supra,* plaintiff is entitled to recover nominal damages without proof of actual injury in an amount not to exceed $1.00 from defendant. *Id.* at ——, 98 S.Ct. 1042, 55 L.Ed.2d at 267.

Plaintiff has requested an award of attorney fees, to which she is entitled under the Civil Rights Attorney Fees Act, 42 U.S.C. § 1988, as a prevailing party, only to the extent that she demonstrates the necessary twelve factors for determining an award of attorney fees. *Wolf v. Frank,* 555 F.2d 1213, 1217–19 (5th Cir. 1977); *Rainey v. Jackson State College,* 551 F.2d 672, 676–77 (5th Cir. 1977). The Court will require documentation, affidavits, and a memorandum by plaintiff in support of her request for attorney fees, before any award is made.

Finally, defendant raises the affirmative defenses of (1) lack of any causal connection to himself, and (2) good faith immunity under the common law. Defendant argues that there is no evidence of any personal conduct or failure to act by himself that deprived plaintiff of her property without due process of law. A claim under § 1983 must allege, and eventually prove, some causal connection between a defendant and the conduct that deprived a plaintiff of his constitutionally guaranteed rights. *Ford v. Byrd,* 544 F.2d 194, 195 (5th Cir. 1976); *Sims v. Adams,* 537 F.2d 829, 831 (5th Cir. 1976); *Palmer v. Hall,* 517 F.2d 705, 708 (5th Cir. 1975); *Chestnut v. Quincy,* Fla., 513 F.2d 91, 92 (5th Cir. 1975); *Anderson v. Nosser,* 456 F.2d 835, 841 (5th Cir. 1972) (en banc), *modif'g & aff'g* 438 F.2d 183 (5th Cir. 1971). Direct liability stemming from personal participation, however, is not the only theory of causal relationship available under § 1983. *Sims v. Adams,* 537 F.2d at 831. There are other theories of causality by which a defendant can be vicariously liable under § 1983. Where a defendant's breach of a legal duty under state or local law results in conduct that deprives a person of constitutional rights, *Roberts v. Williams,* 456 F.2d 819, 830 (5th Cir. 1972), *cert. denied* 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1972); or where, despite a defendant's knowledge of the unconstitutional conduct of his subordinates, he fails to restrain, acquiesces in, or ratifies it, and it deprives a person of his constitutional rights, *Ford v. Byrd,* 544 F.2d at 195; *Chestnut v. Quincy,* Fla., 513 F.2d at 92; the defendant will be vicariously liable.

Where (as here) a defendant, by virtue of his position as chief law enforcement officer of the city, is charged with the duty of enforcing the city's ordinances and official policies; and some of those ordinances are unconstitutional; and his subordinates necessarily perform the particular acts of enforcement at his order and direction; there is no question that he is the

appropriate person to hold subject to declaratory and injunctive decrees.[13] While the common law provides a good faith immunity against liability for damages to public executive officials who (1) neither acted subjectively with a malicious intent to deprive a person of his constitutional rights, (2) nor acted objectively with a deliberate disregard of established constitutional rights, *Wood v. Strickland*, 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214, 224–25 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–92, 40 L.Ed.2d 90, 102–03 (1974); *Schrank v. Bliss*, 412 F.Supp. 28, 40 (M.D.Fla.1976); there is no such immunity against declaratory and equitable, injunctive relief. *Wood v. Strickland*, 420 U.S. at 314 n. 6, 95 S.Ct. at 997, 43 L.Ed.2d at 221 n. 6; *Stanford Daily v. Zurcher*, 550 F.2d 464, 465 (9th Cir. 1977), *rev'd on other grounds* 46 U.S.L.W. 4546 (May 31, 1978); *Demkowicz v. Endry*, 411 F.Supp. 1184, 1191 (S.D.Ohio 1975); *Whorley v. Brilhart*, 359 F.Supp. 539, 542 (E.D. Va.1973). Accordingly, the Court will issue a declaratory judgment and permanent injunction on behalf of plaintiff and the class that she represents.

**13.** Under Florida law, county sheriffs are absolutely liable for the acts of their deputies. Fla. Stats. §§ 30.07, 30.09(3). *Evans v. Hardcastle*, 339 So.2d 1150, 1151 (2d D.C.A. Fla.1976).