Peter V. HANN, Individually and on behalf of all others similarly situated, Plaintiff,

v.

Dale CARSON, Individually and in his official capacity as Sheriff of Duval County, Florida, Officer M. E. Monroe, Individually, and in his official capacity as an employee of the Office of the Sheriff of Duval County, Florida, and Beach Body Company, Inc., a Florida Corporation d/b/a Santford's Beach Garage, Defendants.

No. 78–133–Civ–J–S.

United States District Court, M. D. Florida, Jacksonville Division.

Dec. 21, 1978.

Peter D. Webster, Jacksonville, Fla., for plaintiff Hann.

William A. Davis, Jr., Jacksonville, Fla., for defendants Carson and Monroe.

William G. Noe, Jr., Atlantic Beach, Fla., for defendant Beach Body Company, Inc.

## OPINION

CHARLES R. SCOTT, Senior District Judge.

This case is the sequel to the Court's decision in *Craig v. Carson*, 449 F.Supp. 385 (M.D.Fla.1978).

### Facts

On the evening of February 8, 1978, plaintiff went to a nightclub in the Arlington area of Jacksonville, Florida. The nightclub is known as "The Other Place". He parked his car, a 1963 Plymouth Belvedere, nearby. Around 1:45 o'clock A. M. (February 9), plaintiff left The Other Place, heading for his car. When he reached the place where he had parked it, it was gone. He returned to the nightclub and telephoned the Duval County Sheriff's Department, reporting his car as stolen.

Less than an hour later, a Duval County Sheriff's deputy found the car, which had been stolen, abandoned at Mayport, Florida (within Duval County). That was around 2:20 o'clock A. M., February 9. The deputy,

Officer Michael Evans Monroe, at once impounded the car and radioed for a wrecker to come and tow the car. The car was at that time, however, driveable.

A wrecker from Beach Body Company arrived, and at the officer's direction towed the car to the company's lot, designated as a police storage lot, in Jacksonville Beach, Florida. The car remained stored there.

Not until thirteen days later did plaintiff learn of the location of his car. He then obtained a vehicle release card from the Sheriff's Department, in order to regain his car from the storage lot. On February 25, 1978, plaintiff presented the vehicle release card to the Beach Body Company and requested the return of his car. He was refused. He was informed that unless he paid the towing fee of $35.00 and storage charges accumulating at the rate of $3.00 per day, he could not have his car. When plaintiff said that he was not able to pay the charges, the president of Beach Body Company refused to permit plaintiff access to his car and told him that the company would exercise its legal rights under Florida statutes and City ordinances to insure payment of the charges owed.

This lawsuit was filed March 7, 1978. A preliminary injunction was issued on March 15, 1978, enjoining, pending the outcome of this case, defendant from (1) withholding plaintiff's car from him, and (2) from selling plaintiff's car in order to satisfy the towing and charges accumulated. Since March 15, 1978, therefore, plaintiff has had access to, and use of his car. But for thirty-four days, from February 9 to March 15, 1978, plaintiff was denied the use of his car.

### Issues and Status of the Case

Plaintiff has moved for a summary judgment against defendants on the issue of their liability to him. He seeks injunctive, declaratory, and compensatory relief. Although plaintiff originally raised three issues in his complaint,[1] he urges only one of

---

1. The three issues raised by plaintiff's complaint were (1) that the enforcement of the Jacksonville city ordinances and the Florida statute deprived him of property without due process of law, violating the Due Process Clause; (2) that enforcement of the city ordi-

those issues in his summary judgment motion. That issue is whether the Florida statute and Jacksonville city ordinances that authorized retention of an impounded motor vehicle, the creation of a lien against the vehicle for towing and storage charges, forfeiture of the vehicle after a specified time in order to foreclose the lien and pay the charges outstanding, unless the vehicle owner pays those charges, violated the Fourth Amendment Due Process Clause by depriving a person of property without the safeguards of procedural due process. On that issue plaintiff seeks summary judgment concerning defendants' liability to him.

Of course, plaintiff is entitled to summary judgment, even in part, only if he meets his burden to show (1) the absence of any genuine issues of material fact, and (2) the right to a summary judgment under applicable federal law. Fed.R.Civ.P. 56; *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1968); *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978); *Tanner v. McCall*, 441 F.Supp. 503, 506 (M.D.Fla.1977); *Eberhardy v. GMC*, 404 F.Supp. 826, 829 (M.D.Fla.1975), *aff'd sub nom. Van Eberhardy v. GMC*, 534 F.2d 1406 (5th Cir. 1976). Defendants in this case, however, have not opposed plaintiff's summary judgment motion as to liability. The Court finds the facts material to the issue of property deprivation without procedural due process, advanced by plaintiff in his summary judgment motion, to be undisputed. Therefore, if, as a matter of federal law, plaintiff is entitled to summary judgment concerning defendants' liability on that issue, the Court need not consider and reach the other two issues raised in the complaint.

nances and state statute unreasonably discriminated against him on the basis of his financial condition, violating the Equal Protection Clause; and (3) that impoundment of his car was an unreasonable seizure of his property under color of state law, in violation of the Fourth and Fourteenth Amendments.

Law

Plaintiff argues that defendant Carson and his deputy, defendant Monroe, are precluded from opposing judgment against them on the issue of their liability to plaintiff. The legal term 'preclusion' means both (1) the estoppel by judgment effect of res judicata (including merger and bar) on attempts to relitigate claims, and (2) collateral estoppel against relitigating issues already decided. Plaintiff seeks to use offensive preclusion against defendants Carson and Monroe.[2]

### I. Res judicata: claim preclusion

The principle of res judicata in federal law is that, where a claim in a later case is identical to the claim that was adjudicated in an earlier case; and where the parties in the later case are identical to, or in privity with, the parties in the earlier case, the judgment reached in the earlier case precludes the parties in the later case from attempting to relitigate that claim, including all issues pertaining to the claim, whether or not they were actually litigated in the earlier case. The essential elements of federal res judicata, therefore, are (1) two cases, (2) one of which has proceeded to judgment, (3) raising identical claims, (4) by the same parties or persons in privity with those parties. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122, 1126 (1955); *Moch v. East Baton Rouge Parish School Bd.*, 548 F.2d 594, 596 (5th Cir. 1977); *International Ass'n of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125, 131 (5th Cir. 1975); *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 715, 718 (5th Cir. 1975); *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 8 (5th Cir. 1974). The doctrine of res judicata is premised on the principle of

2. Offensive preclusion is the use of res judicata or collateral estoppel by a party prosecuting an issue or claim to estop a party from defending against it. Defensive preclusion, on the other hand, is the use of res judicata or collateral estoppel by a party in a defensive posture to prevent another party from prosecuting an issue or claim.

judicial finality, precluding the relitigation of a claim only after the same parties have had a reasonable opportunity to litigate that claim before a court of competent jurisdiction, and a final decision concerning the claim has been reached. *Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.,* 575 F.2d 530, 537–38 (5th Cir. 1978); *Stevenson v. International Paper Co.,* 516 F.2d 103, 109 (5th Cir. 1975). The difficulty in applying the doctrine of res judicata revolves around determining the two identity elements: identity of claims, and identity of parties or persons in privity with them. *See, e. g., Stevenson v. International Paper Co.,* 516 F.2d at 109.

## A. Identity of Claims

Res judicata is a principle of claim preclusion. Only if the claims in two cases are identical will the judgment in the first case prevent relitigation in the second case. The identity of claims raised in two cases, therefore, is an indispensable element for res judicata. *International Ass'n of Machinists & Aerospace Workers v. Nix,* 512 F.2d at 131; *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F.2d at 9. In determining whether a claim in a later case is identical to that decided in a prior case, courts must look to the substance and subject matter of the two cases, not their formal appearance. Courts must look past the mere language and labels of the pleadings, beyond the legal theories devised and advanced, to discern the genuine nature of the actions. *Aerojet-General Corp. v. Askew,* 511 F.2d at 715; *As.ron Industrial Assoc., Inc. v. Chrysler Motors Corp.,* 405 F.2d 958, 961 (5th Cir. 1968); *Acree v. Air Line Pilots Ass'n,* 390 F.2d 199, 201 (5th Cir. 1968), *cert. denied* 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122 (1968). "It is the substance of the action that counts." *Acree v. Air Line Pilots Ass'n,* 390 F.2d at 201. *Cf. Wilson Cypress Co. v. Atlantic Coast Line Ry. Co.,* 109 F.2d 623, 627 (5th Cir. 1940), *cert. denied* 310 U.S. 653, 60 S.Ct. 1101, 84 L.Ed. 1418 (1940).

That two cases involve "the same course of wrongful conduct", and request the same kind of relief, does not mean that the two cases involve an identical claim. *Lawlor v. National Screen Service Corp.,* 349 U.S. at 327, 329, 75 S.Ct. at 868, 869, 99 L.Ed. at 1127, 1128. The test for determining whether two cases involve an identical claim, already decided in one of those cases, involves three questions: (1) is the same right infringed by the same wrong in both cases? (2) would a different judgment in the second case impair rights that were established and protected by the judgment in the first case? (3) would the same evidence sustain both the judgment in the first case and a judgment in the second? *Aerojet-General Corp. v. Askew,* 511 F.2d at 718; *Astron Industrial Assoc., Inc. v. Chrysler Motors Corp.,* 405 F.2d at 961; *Acree v. Air Line Pilots Ass'n,* 390 F.2d at 201.

## B. Identity of Parties

Where the same claim has been decided in one case by the same parties who are attempting to relitigate it in a second case, those parties, or persons in privity with them, are precluded from relitigating the claim. Under the common law, res judicata prevents by bar or merger the relitigation of a decided claim only by the same parties, or those in privity with them. *Southwest Airlines Co. v. Texas Int'l Airlines,* 546 F.2d 84, 95 (5th Cir. 1977), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

The more difficult problem in applying the principle of res judicata is in determining whether a party in a second case was in privity with a party in the first case. The term 'in privity' has come to mean through decisional law a representative relationship between a party in the first case and a party in the second case, at the time the same claim was litigated and decided in the first case. Whether such a representative relationship existed at that time is a mixed question of fact and law. Because the answer to the question stems from, and is determined by, the individual circumstances and facts in each case, it will be reversed on appellate review only where clearly erroneous. *Southwestern Airlines*

*Co. v. Texas Int'l Airlines,* 546 F.2d at 95, 96; *Aerojet-General Corp. v. Askew,* 511 F.2d at 719; *Astron Industrial Assoc., Inc. v. Chrysler Motors Corp.,* 405 F.2d at 961. Nevertheless, the conclusion that is shaped from those facts, about whether such a representative relationship existed or not, is controlled by "orthodox categories" of representative relationships under established law. *Lawlor v. National Screen Service Corp.,* 349 U.S. at 329 n. 19, 75 S.Ct. at 869 n. 19, 99 L.Ed. at 1128 n. 19.

For example, if a party in a second case, involving the same claim, controlled the action by a party in the first case, that relationship of influence and control will qualify as an "in privity" relationship for purposes of res judicata. *Id.; Astron Industrial Assoc., Inc. v. Chrysler Motors Corp.,* 405 F.2d at 961. Likewise, if a party in the second case is a successor-in-interest to a party in the first case, the privity relationship exists. Similarly, if the interests of a party in the second case were adequately represented by a party in the first case, then notwithstanding the label of the relationship, it will be sufficiently representative to count as "in privity" for res judicata purposes.[3] Examples of adequate representative relationships, constituting privity for res judicata purposes, are (1) the trustee-beneficiary relationship; (2) a relationship of expressly authorized representation; (3) a fiduciary-like relationship (such as an executor, administrator, guardian, conservator) and the beneficiary of that relationship; (4) an obligatory relationship, by operation of law, in which it is incumbent upon an official or agency to represent the interests of another; and (5) the relationship between a member of a certified class in a class action, and the other members of that class. *Restatement of Judgments* 2d, § 85, tentative draft No. 2 (1975); *Southwestern Airlines Co. v. Texas Int'l Airlines,* 546 F.2d at 96 and n. 42, 100 n. 57. *Cf. Hansberry v. Lee,* 311 U.S. 32, 41–43, 61 S.Ct. 115, 118, 85 L.Ed. 22, 26–27 (1940).

Plaintiff has two claims in this case. The first claim is that defendants' conduct, which was authorized by the challenged Jacksonville municipal ordinances, violated plaintiff's constitutional rights. The second claim is closely akin. It is that defendants' conduct, which was sanctioned by the challenged state statute, also violated plaintiff's constitutional rights. The identity of plaintiffs' first claim with that of the plaintiff in *Craig v. Carson, supra,* is unmistakable.

The same rights were infringed in both cases. In *Craig v. Carson,* 449 F.Supp. at 394, the plaintiff had two personal property interests at stake: her money or her car. In the present case, plaintiff's interests "in being free from unjustified payments of charges and fees", and in the use of his car "for purposes of earning a living, conducting [his] business affairs, and carrying on the majority of [his] activities," are as obvious as they were in *Craig v. Carson,* 449 F.Supp. at 394. Additionally, the plaintiff in *Craig v. Carson* sued to enforce her constitutional right to due process before being finally deprived of her personal property under the authority of the city ordinances. Likewise, in this case plaintiff has had to sue in order to secure the fundamentals of procedural due process guaranteed by the Fourteenth Amendment, before being subjected to an absolute and final loss of personal property.

In both cases, the same wrong caused the violation of the plaintiffs' constitutional rights. In *Craig v. Carson,* the city ordinances authorized impoundment of the plaintiff's car, assessment of towing and storage charges against her, creation of a lien against her car for those charges, and automatic forfeiture of her car after sixty days to foreclose the lien and pay the charges due, without any opportunity to contest those results. The same results were accomplished by operation of the same city ordinances in the present case, and again no opportunity to dispute them was provided.

---

**3.** An adequate representative relationship that qualifies as privity for res judicata does not include the notion of concurrent interests. The so-called "concurrent interest" test for a privity relationship has been soundly rejected by the Fifth Circuit. *Southwestern Airlines Co. v. Texas International Airlines,* 546 F.2d at 95 n. 40 and 97.

The same evidence would support the final decision in *Craig v. Carson,* and the Court's decision concerning plaintiff's first claim in this case. The facts developed in the present case could readily be substituted for the evidentiary basis in *Craig v. Carson,* and the law would still require the same decision in that case. The law, therefore, dictates that the same decision as that in *Craig v. Carson* would have to be reached in the present case. Thus, the Court must conclude that the claim presented and decided in *Craig v. Carson* is identical to plaintiff's first claim in the case at hand.

The identity or privity of the parties in both cases is even more evident. Defendant Carson was sued · and held liable in *Craig v. Carson,* 449 F.Supp. at 396–97, for the unconstitutional conduct of his deputy, acting at defendant Carson's orders, in enforcing unconstitutional municipal ordinances. In the present case, defendant Carson is again sued for the same conduct of his deputy, but the particular deputy directing that conduct has also been joined and sued as a defendant. It is beyond cavil, therefore, that Sheriff Carson is the same defendant is both cases.

It is equally certain, however, that defendant Monroe, acting as the deputy of Sheriff Carson, is in privity with him for the purposes of res judicata. In *Craig v. Carson,* Officer St. Johns personally directed the wrongful conduct authorized by the unconstitutional ordinances. 449 F.Supp. at 387–88. Yet, Sheriff Carson was held liable, because Florida law holds county sheriffs "liable for the acts of their deputies." *Id.* at 397 and n. 13. *See* Fla.Stat. §§ 30.07, 30.09(3); *Evans v. Hardcastle,* 339 So.2d 1150, 1151 (2d D.C.A.Fla.1976). Hence, under Florida law Sheriff Carson is obliged to represent, and answer for, the interests of his deputies when they are sued for their official conduct. That is the kind of obligatory representative relationship, by operation of law, that constitutes privity between defendant, Sheriff Carson, and his deputy, defendant Monroe. *See Restatement of Judgments* 2d § 85, tentative draft No. 2 (1975), at 56, 61–63; *Southwestern Airlines Co. v. Texas Int'l Airlines,* 546 F.2d at 96 and n. 42.

Furthermore plaintiff in this case was in privity with the plaintiff in *Craig v. Carson.* That case, like this one, was a class action. 449 F.Supp. at 387, 397. The plaintiff represented the class of all persons subject to being deprived of access to and use of their automobiles because of the provisions in the city ordinances, which were later declared to be unconstitutional, requiring impoundment and obligatory prepayment of towing and storage fees. Plainly, plaintiff in the present case was a member of the class represented by the plaintiff in *Craig v. Carson.* As a result of the Court-approved relationship between the class of plaintiffs who were represented in *Craig v. Carson,* and the individual plaintiff in that case, the interests of those class members (including plaintiff in the present case) were sufficiently typical and congruent with that of the individual plaintiff that she adequately represented them; and they, in turn, were in privity with her. *See Restatement of Judgments* 2d § 85; *Southwestern Airlines Co. v. Texas Int'l Airlines,* 546 F.2d at 100 · n. 57. *Cf. Hansberry v. Lee,* 311 U.S. at 41–43, 61 S.Ct. at 118, 85 L.Ed. at 26–27.

■ The Court holds, therefore, that defendant Carson and Monroe in the case at hand were respectively identical and in privity with the defendant in *Craig v. Carson, supra.* Likewise, the Court holds that plaintiff in the present case, by virtue of his membership in the certified class of plaintiffs in *Craig v. Carson,* was in privity with the individual plaintiff in that case. Having concluded (1) that plaintiff, and defendants Carson and Monroe, in this case were identical to, or in privity with, the plaintiff and the defendant in *Craig v. Carson* ; and (2) that plaintiff's first claim in this case is identical to the plaintiff's claim raised and litigated in *Craig v. Carson* ; the Court holds that the final decision reached in *Craig v. Carson* is necessarily conclusive and binding on the first claim in the case at hand. In short, the Court holds that the principle of res judicata applies to bar litigation of plaintiff's first claim in this case,

inasmuch as it would be an attempt to relitigate the claim decided in *Craig v. Carson*. As a result of the final decision in that case, defendants Carson and Monroe in this case are estopped from relitigating their liability under the city ordinances.

■ Nevertheless, plaintiff's requests for declaratory and injunctive relief on his first claim are moot. Within a short time after the Court's decision in *Craig v. Carson*, declaring unconstitutional, and enjoining enforcement of, the Jacksonville municipal ordinances, the City Council repealed those ordinances and enacted different ones, to provide the deficient due process. Plaintiff's need for declaratory and injunctive relief concerning those ordinances has vanished therefore, and his prayer for such relief has become moot.

■ Plaintiff's request for compensatory relief, however, is not moot. In *Craig v. Carson*, the plaintiff rested her case without presenting any evidence of "actual damages suffered." 449 F.Supp. at 396. The Court, therefore, adhered to the Supreme Court's decision in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), that damages or injury cannot "be 'presumed' to flow from every denial of procedural due process." 435 U.S. at 261, 98 S.Ct. at 1051, 55 L.Ed.2d at 264. Without proof of actual damages, the plaintiff in *Craig v. Carson* was entitled to, and awarded, nominal damages of $1.00. In contrast, plaintiff in this case has indicated his intention to present evidence of actual damages, and accordingly has moved for partial summary judgment on the question of liability only. The doctrine of res judicata makes the decision reached by the Court in *Craig v. Carson* conclusive on the issue of liability by defendants Carson and Monroe to plaintiff in the present case for any damages that he might prove.

In *Craig v. Carson*, defendant Carson raised the "affirmative defenses of (1) lack of any causal connection to himself, and (2) good faith immunity under the common law". 449 F.Supp. at 396. However, because of the plaintiff's failure to present evidence of actual damages, the defenses were unnecessary to counter her request for damages; and those defenses are ineffective to avoid injunctive and declaratory relief. *Id.* at 397. There are no affirmative defenses raised by defendants Carson and Monroe in this case, and they have not opposed plaintiff's summary judgment motion on the issue of liability. Hence, they cannot avoid the conclusive effect of the decision in *Craig v. Carson* on the question of their liability to plaintiff under his first claim in this case. The Court so holds.

■ Res judicata does not apply to defendant Beach Body Company, however. It neither appeared, nor had its interest represented by the defendant, in *Craig v. Carson*. While plaintiff's requests for declaratory and injunctive relief against Beach Body Company remain moot because of the enactment of new ordinances, his request for damages on the question of liability by Beach Body Company must await a decision on the merits of both of plaintiff's claims in this case.

## II. Collateral estoppel: issue preclusion

Plaintiff also seeks to use the principle of collateral estoppel offensively against defendants Carson and Monroe. He argues that they are estopped from attempting to relitigate all issues involved in plaintiff's second claim in this case, which are identical to issues actually decided in *Craig v. Carson*.

■ The principle of collateral estoppel is traditionally regarded as preventing identical parties, or those in privity with them, in an earlier case, from relitigating in a later case the same issues actually litigated and decided in an earlier case, even where the claims presented in the two cases are different. *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970); *Lawlor v. National Screen Service Corp.*, 349 U.S. at 326, 75 S.Ct. at 867, 99 L.Ed. at 1126; *Stevenson v. International Paper Co.*, 516 F.2d at 109. It is a less stringent, and therefore less encompassing, form of preclusion. *Stevenson v. International Paper Co.*, 516 F.2d at 109; *Interna-*

tional Ass'n of Machinists & Aerospace Workers v. Nix, 512 F.2d at 131. The essential elements of collateral estoppel are (1) two cases, (2) involving the same questions of law or fact, (3) which were actually litigated and decided in the earlier case. Historically, the identity or privity of the parties in both cases was an element of collateral estoppel known as "the mutuality requirement".

The mutuality requirement for the application of collateral estoppel was a judicially-created element. *Blonder-Tongue Labs, Inc. v. University of Ill. Foundation*, 402 U.S. 313, 320, 91 S.Ct. 1434, 1438, 28 L.Ed.2d 788, 795 (1971). It necessitated that, if a judgment in an earlier case was to be a conclusive determination for the same issues of law or fact in a later case, both parties in the later case must be identical to, or in privity with, the parties in the earlier case. *Id.* at 320–21, 91 S.Ct. at 1439, 28 L.Ed.2d at 795. Under the mutuality requirement, a litigant was prevented from "invoking the conclusive effect of a judgment, unless he was a party or in privity with a party to the suit in which the prior judgment was rendered." *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 461 (5th Cir. 1971), *cert. denied* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971). *Cf. Blonder-Tongue Labs, Inc. v. University of Ill. Foundation*, 402 U.S. at 322 n. 9, 91 S.Ct. at 1439 n. 9, 28 L.Ed.2d at 796 n. 9.

Having come under increasing criticism, the mutuality rule has been jettisoned as a requirement for modern of principles of collateral estoppel. The mutuality requirement has been rejected as an essential element for the federal principle of collateral estoppel, especially in the Fifth Circuit. *Bogard v. Cook*, 586 F.2d 399, 409 (5th Cir. 1978); *Johnson v. United States*, 576 F.2d 606, 611, 614 (5th Cir. 1978); *Poster Exchange, Inc. v. National Screen Service Corp.*, 517 F.2d 117, 122 (5th Cir. 1975), *cert. denied* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976); *Cheramie v. Tucker*, 493 F.2d 586, 589 n. 10 (5th Cir. 1974). As a result, for collateral estoppel to apply, it is necessary only that the party who would be precluded from relitigating the same issues was identical to, or in privity with, a party in the earlier case. *Blonder-Tongue Labs, Inc. v. University of Ill. Foundation*, 402 U.S. at 322, 91 S.Ct. at 1439, 28 L.Ed.2d at 796. *Cf. Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 593, 94 S.Ct. 806, 819, 39 L.Ed.2d 9, 26 (1974). Elimination of the mutuality requirement for collateral estoppel is based on the view that once a party has had a full and fair opportunity to litigate a question, he ought not to be permitted a second opportunity to litigate the same question in a later case, simply because he has a different adversary. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d at 461.

Instead of an inflexible mutuality requirement, the test for whether collateral estoppel applies where only the party to be estopped in a later case is identical to, or in privity with, a party in an earlier case, is one of fairness. It is whether the party to be precluded in the later case had a full and fair opportunity to litigate the same question in the earlier case, so that there will be no resulting injustice from the effect of collateral estoppel. *Blonder-Tongue Labs, Inc. v. University of Ill. Foundation*, 402 U.S. at 333, 91 S.Ct. at 1445, 28 L.Ed.2d at 802; *Johnson v. United States*, 576 F.2d at 614. This test necessitates a case-by-case evaluation of the opportunity to litigate the same question decided in an earlier case, in order to determine the fairness of applying collateral estoppel in a later case. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d at 461. Two factors which the Court should consider in using the fairness test for applying collateral estoppel are (1) the procedural posture in the earlier case of the party to be precluded in the later case, and (2) the intended use of collateral estoppel, whether offensively or defensively.

If the party to be precluded in a later case had the initiative and burden of proof in an earlier case, then, regardless of whether collateral estoppel is used defensively or offensively, little unfairness would result in preventing that party from relitigating in a later case the same questions already decided.

On the other hand, if the party to be precluded from relitigation in a later case did not have the initiative and burden of proof in an earlier case, then several other factors are important to consider. The need and motivation of the party to be precluded in a later case, to litigate the same questions vigorously in an earlier case, are important. If an earlier case was one involving de minimus interests, or having marginal consequences, the necessity and incentive for full-throttle litigation was probably missing. The opportunity of the party to be precluded in a later case, to choose or change the forum in which the same questions were litigated in an earlier case, might affect the prejudice or fairness of using collateral estoppel against that party. *Blonder-Tongue Labs, Inc. v. University of Ill. Foundation*, 402 U.S. at 333, 91 S.Ct. at 1445, 28 L.Ed.2d at 802; *Johnson v. United States*, 576 F.2d at 614. The foreseeability to the party to be precluded in a later case, at the time that questions were litigated and decided in an earlier case, that those issues would be important in future litigation, could also affect the fairness of collaterally estopping that party in a later case. *Johnson v. United States*, 576 F.2d at 615; *Mosher Steel Co. v. NLRB*, 568 F.2d 436, 440 (5th Cir. 1978). Of course, if it is determined that none of these factors in any way resulted in any prejudice, from an earlier case, to the party to be precluded in a later case, then it is unlikely that collaterally preventing that party from relitigating the same issues is unfair. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d at 462. That would be true even if collateral estoppel were used offensively against a defendant in a later case, who had been a defendant in an earlier case. In short, given a full and fair opportunity to litigate the same questions in an earlier case, there is no reason why a defendant in that case should be allowed a second opportunity to relitigate in a later case the same questions already decided.

Under the modern principle of collateral estoppel therefore, it is essential only (1) that the issues of law or fact involved in a later case are identical to issues of law or fact presented in an earlier case; (2) that those issues were actually litigated and decided in the earlier case; and (3) that the decision concerning those issues was a necessary and integral part in arriving at the judgment in the earlier case. *Johnson v. United States*, 576 F.2d at 615; *Stevenson v. International Paper Co.*, 516 F.2d at 110, *International Ass'n of Machinists & Aerospace Workers v. Nix*, 512 F.2d at 131; *Port Arthur Towing Co. v. Owens-Ill., Inc.*, 492 F.2d 688, 692 n. 6 (5th Cir. 1974); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d at 458. That the two cases involve different claims, and employ different legal theories, is irrelevant to the applicability of collateral estoppel. *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d at 459.

Many of the questions of law and fact which comprise plaintiff's second claim in this case were litigated and decided in *Craig v. Carson*. A major question, which was inextricably involved in the plaintiff's claim in *Craig v. Carson*, is present in plaintiff's claims in this case. That question is whether impoundment of a person's automobile, assessment of towing and storage charges, creation of a lien against the car for those charges, and automatic forfeiture of the car to foreclose the lien and satisfy the charges, all without any opportunity to challenge such conduct, deprives the owner of property without due process of law. In *Craig v. Carson*, the Court held that it does.

Although mutuality of the parties in both cases is no longer a requirement for collateral estoppel to apply, it is nevertheless present in this case. Plaintiff, as a member of the certified class represented by the plaintiff in *Craig v. Carson*, was in a privity relationship with her. Defendant Carson, who was the same defendant in *Craig v. Carson*, and defendant Monroe, in privity with defendant Carson, now seek to relitigate that principle question as a part of plaintiff's second claim in this case. Their legal position on this major question was fully litigated in *Craig v. Carson*. Although the initiative and burden of proof did not rest on defendant Carson in that case, and it does not rest on him or his deputy, de-

fendant Monroe in this case, their viewpoint and legal theories concerning that chief question were far more vigorously advanced in that case than in this one. Affirmative defenses were raised in that case. The burden to prove those affirmative defenses rested squarely on defendant Carson. In contrast, no affirmative defenses have been raised in the present case. The plaintiff's motions in *Craig v. Carson* were opposed by defendant Carson. On the other hand, in the present case plaintiff's summary judgment is unopposed.

The Court provided the same forum for litigation in both *Craig v. Carson* and the present case. One cannot reasonably argue that any prejudice results from litigating federal, constitutional questions in the courts of the United States.

The Court holds that defendants Carson and Monroe are collaterally estopped from relitigating, as part of their defense in the present case, the same question concerning deprivation of personal property without procedural due process that was actually litigated and necessarily decided in *Craig v. Carson*, 449 F.Supp. at 396. Of course, defendants Carson and Monroe are not precluded from litigating the defense that the state statute, Fla.Stat. § 85.031(3) facially, or by an interpretive application, affords sufficient due process to satisfy the Fourteenth Amendment. That question remains to be decided on the merits.

### III. The Merits

The Court adheres firmly to its reasoning and ruling concerning the application of federal principles of res judicata and collateral estoppel in this case. Nevertheless, apart from any res judicata or collateral estoppel effects, the Court's decision on the merits of plaintiff's two claims in this case would be guided by three recent decisions: *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Gillam v. Landrieu*, 455 F.Supp. 1030 (E.D.La.1978); and this Court's decision in *Craig v. Carson, supra*. Those three decisions, therefore, will guide the Court in deciding plaintiff's second claim in this case.

The Fourteenth Amendment forbids state conduct, no matter what governmental form, from depriving a person of liberty or property interests, even for legitimate governmental, public purposes, without providing the fundamental safeguards of procedural due process. *Memphis Light, Gas & Water Div. v. Craft*, 56 L.Ed.2d at 39; *Craig v. Carson*, 449 F.Supp. at 390. As this Court pointed out in *Craig v. Carson*, 449 F.Supp. at 391, " '[p]rocedural due process' is a fluid, open-ended term." To determine the kind of procedural due process guaranties that are required in a specific situation, three factors must be balanced: "(1) the particular . . . private liberty or property interest at stake; (2) the risk of a wrongful and erroneous deprivation of that interest; and (3) the public or governmental interest involved." *Id.; Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. at 17, 98 S.Ct. at 1564, 56 L.Ed.2d at 44; *Carey v. Piphus*, 435 U.S. at 259, 98 S.Ct. at 1050, 55 L.Ed.2d at 262; *Smith v. Organization of Foster Families*, 431 U.S. 816, 848, 97 S.Ct. 2094, 2112, 53 L.Ed.2d 14, 38 (1977); *Dixon v. Love*, 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172, 180 (1977); *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33 (1976).

It is beyond question that plaintiff has a genuine property interest in the possession and use of his car, and in being free from unjustified payments of towing and storage charges. *Gillam v. Landrieu*, 455 F.Supp. at 1038, 1040; *Craig v. Carson*, 449 F.Supp. at 394.

On the other hand, the governmental interest underlying the state statute that authorized defendants' conduct in this case is far less discernible than the reasons behind the municipal ordinances in *Craig v. Carson*. Cf. 449 F.Supp. 394. The statute challenged by plaintiff's second claim is part of the remedies provided by the Florida Legislature to effectuate the statutorily-created liens for people who perform labor or supply services for the personal property of others. Fla.Stat. § 713.58 (Supp.1971). *See*

Fla.Stat. § 85.031. The specific provision of the statute which plaintiff attacks authorizes a remedy for those who furnish labor or services in connection with motor vehicles. Fla.Stat. § 85.031(3). *Cf. Young v. Robinson,* 585 F.2d 723, 725 and nn. 1–3 (5th Cir. 1978). The apparent legislative purpose of this statutory scheme is to give an expeditious legal recourse to those persons who, having performed labor or services to personal property in general, and to motor vehicles in particular, are owed and entitled to payment of their justly earned and due charges. The intent is good, but it cannot justify the immense risk of error contained in the statute.

It is true that procedural due process is flexible and variable in form, and that the kind of due process required to provide protection depends upon the particular situation. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 15 n. 15, 98 S.Ct. at 1563 n. 15, 56 L.Ed.2d at 42 n. 15; *Craig v. Carson,* 449 F.Supp. at 391. But "the complete absence of any due process at all cannot be justified under the guise of flexibility." *Craig v. Carson,* 449 F.Supp. at 395. A huge risk of erroneous and wrongful deprivation is inherent in the statute under attack in this case because it lacks the essentials of procedural due process.

> What is constant and identifiable in every varying factual situation where different forms of the basic procedural due process safeguards appear is that they are meaningful and reasonable. *Id.* at 391.

*Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 15, 98 S.Ct. at 1563, 56 L.Ed.2d at 42; *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950). Both the notice and hearing essentials of procedural due process "must be reasonable and meaningful in the time and manner in which they occur." *Craig v. Carson,* 449 F.Supp. at 391. "The purpose of notice . . . is to apprise the affected individual of, and permit adequate preparation for," the hearing provided. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 14, 98 S.Ct. at

1563, 56 L.Ed.2d at 42. Before the decision to deprive a person of his liberty or property interest becomes irrevocable and final, some kind of hearing concerning that deprivation, whether before or after the initial deprivation, is required. *Id.* 436 U.S. at 16, 98 S.Ct. at 1563, 56 L.Ed.2d at 43; *Mathews v. Eldridge,* 424 U.S. at 333, 96 S.Ct. at 902, 47 L.Ed.2d at 32; *Craig v. Carson,* 449 F.Supp. at 391.

In *Memphis Light, Gas & Water Div. v. Craft, supra,* consumers who believed their utility bills were incorrect received notice only that if they did not pay those bills their utility service would be terminated. The Supreme Court rejected such notification as

> . . . adequate to apprise [the consumers] of the threat of termination of service, [but] not "reasonably calculated" to inform them of the availability of "an opportunity to present their objections" to their bills. 436 U.S. at 14, 98 S.Ct. at 1563, 56 L.Ed.2d at 42.

Because the city utility did "not advise the customer of the availability of a procedure for protesting a proposed termination of utility service as unjustified," *id.* 436 U.S. at 15, 98 S.Ct. at 1563, 56 L.Ed.2d at 43, the utility's notice did "not comport with constitutional requirements". *Id.* 436 U.S. at 15, 98 S.Ct. at 1562, 56 L.Ed.2d at 42–43. Like the Supreme Court, this Court two weeks earlier had repudiated the notion that notice of a *fait accompli* would satisfy the demands of the Due Process Clause. *Craig v. Carson,* 449 F.Supp. at 395. It is exactly this kind of notice that the state statute in this case contains. The notice by mail, as the notice by newspaper publication, apprises an owner only of the fact that his motor vehicle will be sold at a forced sale or auction. At that point, the notice is merely of an impending result whose finality is foregone. In addition, under the requirements of the statute, no notice need occur until thirty days after an owner has been denied access to his car for failure to pay the assessed charges. Fifteen days after that, within a total of merely forty-five days, an owner who does not pay the as-

sessed charges can lose title and ownership of his motor vehicle, without any opportunity to contest the loss. In the swiftness with which it imposes a final loss of property upon an owner, without any opportunity to challenge that loss, the state statute is more blatantly egregious than the city ordinances struck down as unconstitutional in *Craig v. Carson,* 449 F.Supp. at 389, 394. Far "more serious than the lack of an adequate, meaningful notice to an owner" is the absence of any fair hearing and opportunity to challenge the assessment of charges, creation of a lien, forfeiture of a motor vehicle to satisfy those charges and foreclose that lien, along with the imposition of sale costs and a five percent surcharge for the clerk of the court. *Id.* at 395.

Some form of fair and impartial hearing, at which an owner is provided an opportunity to challenge the lawfulness of . . . assessing charges against him and creating a lien against his car for those charges, must be provided within a prompt and reasonable time period. In addition, no legitimate governmental interest is served by, or justifies, the severe loss and hardship that withholding an owner's car from him imposes. *Id.*

"Apart from bringing an independent lawsuit, like the present one, . . . an individual has no opportunity to contest" the legal consequences of the state statute. The Supreme Court, however, has emphatically rejected the notion that available, common law remedies, for injunctive and compensatory relief, are "an adequate substitute" for an accurate, administrative remedy. *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. at 20, 98 S.Ct. at 1566, 56 L.Ed.2d at 45–46.

Judicial remedies are particularly unsuited to the resolution of factual disputes typically involving sums of money too small to justify engaging counsel or bringing a lawsuit. An action in equity to halt an improper [deprivation], because it is less likely to be pursued and less likely to be effective, even if pursued, will not provide the same assurance of accurate decisionmaking as would an adequate administrative procedure. *Id.* 436

U.S. at 21, 98 S.Ct. at 1566, 56 L.Ed.2d at 46.

Because of the state statute's "failure to provide notice reasonably calculated to apprise" motor vehicle owners of the availability of procedures to consider their claims that their vehicles are wrongfully and erroneously being withheld; and because of the state statute's "failure to afford [motor vehicle owners] an opportunity to present" their disputes and to have errors rectified, the statute deprives motor vehicle owners of their "interest in property without due process of law." *Id.* 436 U.S. at 22, 98 S.Ct. at 1567, 56 L.Ed.2d at 46–47.

### Conclusion

The Court declares Fla.Stat. § 85.031(3) to be unconstitutional because it authorizes a final deprivation of property without due process of law. Accordingly, the Court will enjoin enforcement of Fla.Stat. § 85.031(3). Additionally, the Court holds that defendants Carson and Monroe are liable to plaintiff for any actual damages that he may be able to prove resulting from the withholding of his car under the authority of Fla. Stat. § 85.031(3).

■ The Court's decision in this case, granting declaratory, injunctive, and compensatory relief for plaintiff applies to defendant Beach Body Company as well. The city ordinances at the heart of plaintiff's first claim have already been declared unconstitutional and their enforcement has been enjoined. *Craig v. Carson,* 449 F.Supp. at 396. Although Beach Body Company is a private corporation, its conduct was at the "direction of the Sheriff's Department" and was authorized by the constitutionally infirm city ordinances. *Id.* at 392. The effect of the state statute challenged by plaintiff's second claim is similar. Having towed and stored plaintiff's car at the direction of defendants Carson and Monroe, Beach Body Company's authority to assess towing and storage charges against plaintiff, to retain his car unless he paid those charges, to foreclose a lien against his car in order to satisfy payment of the charges, and to force the sale

of his car within forty-five days if the charges remained unpaid, is derived directly from Fla.Stat. § 85.031(3). There can be no serious doubt that, in depriving plaintiff of his car, otherwise nominally private activity of Beach Body Company has become state action as a result of its relationship with, and participation in, the state-authorized conduct of defendants Carson and Monroe. *Cf. Hennessey v. NCAA,* 564 F.2d 1136, 1144 (5th Cir. 1977); *Robinson v. Price,* 553 F.2d 918, 920 (5th Cir. 1977). Steeped in the official conduct of state law enforcement officers, and in the authority of municipal ordinances and a state statute, the conduct of Beach Body Company constitutes state action. *Stypmann v. San Francisco,* 557 F.2d 1338, 1341 (9th Cir. 1977); *Craig v. Carson,* 449 F.Supp. at 392; *Tedeschi v. Blackwood,* 410 F.Supp. 34, 41–43 (D.Conn.1976). The Court holds, therefore, that Beach Body Company is liable to plaintiff for whatever actual damages he can prove.