**MISSOURI STATE HIGHWAY PATROL, Appellant,**

v.

**Dennis DIEKMAN and Northwest Towing, Respondents.**

**No. 50038.**

Missouri Court of Appeals, Eastern District, Division Five.

Oct. 29, 1985.

William L. Webster, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for appellant.

Dennis Diekman, pro se.

DONALD L. MANFORD, Special Judge.

This is a civil action wherein appellant (the Missouri Highway Patrol, hereinafter, the Patrol) sought determination of the legal ownership to a motor vehicle and the declaration of the party responsible for storage costs. The action was initiated under a petition captioned, "Petition In Interpleader." The trial court entered judgment determining ownership to the vehicle in respondent Dennis Diekman (hereinafter Diekman) and declaring the Patrol responsible for storage costs to respondent Donny Bruce, d/b/a Northwest Towing Company (hereinafter Northwest). The judgment is affirmed in part and in part reversed, and the cause is remanded with directions.

A sole point is presented, which in summary charges that the trial court erred in its entry of judgment in failing to assess the cost of storage and towing against Diekman.

This cause, having been tried to the court without a jury, brings the review of same within Rule 73.01 and the interpretation of that rule as announced in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). It must be noted that the cause was titled in one interpleader under Rule 52.07. This is a misnomer due to the fact that the action was commenced by interpleader which the rules do not permit. More importantly, neither within the petition nor the evidence was it declared or proven that the Patrol was or might have been exposed to double liability. The action more properly should have been initiated as one for declaratory judgment and so acknowledged by the trial court. This court, within the authority prescribed by Rule 73.01, takes up the cause and disposes of same by a review of both the evidence and the applicable law. It is further noted that none of the parties requested findings of fact or conclusions of law and neither were entered.

The applicable facts are as follows:

On April 14, 1982, at approximately 3:40 p.m., Trooper Conway, of the Patrol, stopped a black 1973 Chevrolet Silverado pick-up truck for expired dealer's plates. Upon attempting to locate the serial number of the vehicle, Trooper Conway discovered that the vehicle identification number (VIN) plate had been tampered with. (Trooper Conway testified that he noticed scratches around the plate, and that the plate had been affixed with improper rivets.) Trooper Conway arrested the driver of the vehicle, Michael Bone (his relation to respondent Diekman is not known), and arranged to have the vehicle towed pursuant to § 301.390.2.

The vehicle was towed to Troop C Headquarters in St. Louis County by Northwest Towing. The Patrol did not have a contract with Northwest, or with any other towing service. The practice of the Patrol was to contact a towing service which was geographically convenient. Apparently, Northwest was located in the area where

the vehicle was stopped. There the vehicle was inspected by Trooper Hug, and such inspection revealed that the EPA sticker, normally affixed to the door, was missing; that there were scratches around the VIN plate; that the VIN plate was affixed with improper rivets; that there were no "stolen entries" on the frame numbers; that the motor number had been ground off and restamped; and that the most recent registered owner of the vehicle was a Kenny Theiemann.

On April 15, 1982, at approximately 2:15 p.m., Trooper Hug received a telephone call from Diekman concerning the vehicle. Diekman, who claimed ownership of the vehicle, was informed by Trooper Hug about the "discrepancy" with the VIN. Diekman admitted that he had replaced the VIN plate because he had replaced the cab of the truck and that he had changed the VIN plate so it would match. Diekman claimed he did not think there was anything wrong in this, however, he admitted during the trial that he knew what VINs were for and why they were important. Diekman was charged with violating the statutes pertaining to alterations of VINs, however, charges were dismissed for "inability to prosecute." The evidence is not clear whether Trooper Hug informed Diekman during the conversation that the vehicle was to be stored at Northwest Towing. However, Trooper Hug did testify that he told Diekman that he could regain possession of the vehicle by applying to the director of revenue for a new VIN. Diekman did not apply for a new VIN nor did he attempt, in any other way, to regain possession of his vehicle.

On July 25, 1983, the Patrol filed a petition dubbed interpleader with the circuit court of Jefferson County, Missouri, requesting that the court determine ownership of the vehicle, ordering the owner to apply for a new VIN, order the owner to pay the storage charges owing to Northwest Towing (which still had possession of the vehicle) or, in the alternative, to allow Northwest to sell the vehicle to recoup payment of said storage charges.

On March 29, 1985, the trial court entered judgment, ordering ownership of the vehicle to be with Diekman, that the vehicle be released to Diekman upon his compliance with § 301.380 (provision to obtain a new VIN), and that storage charges for April 15, 1982, through March 29, 1985 were to be settled between the Patrol and Northwest. As of March 29, 1985, the storage charges were in excess of (FIVE THOUSAND DOLLARS) $5,000.

The Patrol presents this appeal. In support of its asserted error, the Patrol contends that the trial court erred in failing to assess storage and towing costs against Diekman because the vehicle had been properly impounded pursuant to § 301.-390.2 and because Diekman's failure to comply with statutory requirements (i.e. obtain a new VIN as required by § 301.380) resulted in the vehicle being impounded for over three years and therefore, Diekman should be estopped to deny his liability for the towing costs because his actions constituted laches.

Diekman's vehicle was seized and impounded pursuant to § 301.390.2, which states:

> Every peace officer who has knowledge of a motor vehicle, trailer or motor vehicle tire, the number of which has been removed, covered, altered, destroyed or defaced, and for which no special number has been issued, shall immediately seize, take possession of such motor vehicle, trailer or motor vehicle tire, arrest the supposed owner or custodian thereof, and cause prosecution to be begun in a court of competent jurisdiction.

Trooper Conway's testimony indicated that upon stopping the vehicle he was given cause to believe that the VIN plate had been tampered with. Trooper Conway seized the vehicle, as he was *required* to do under § 301.390.2, and transported the vehicle to Troop C Headquarters.

A prompt inspection, as well as Diekman's own admissions to Trooper Hug, supported the conclusion that § 301.390.1 had been violated (and that, in fact, §§ 301.380.1. and .400 had also been violat-

ed) and that, therefore, Trooper Conway's confiscation of the vehicle was valid and lawful.

The dilemma in this case is that the statutes make no provision for the payment of towing and storage costs. The Patrol cites several cases from other jurisdictions which have similar statutes that provide for the costs to be paid by the owner of the vehicle owner. *See, Stypmann v. City and County of San Francisco,* 557 F.2d 1338 (9th Cir.1977); *Huemmer v. Mayor and City Council of Ocean City,* 474 F.Supp. 704 (D.Md.1979); *Hann v. Carson,* 462 F.Supp. 854 (M.D.Fla.1978); *Gillam v. Landrieu,* 455 F.Supp. 1030 (E.D.La.1978); *Remm v. Landrieu,* 418 F.Supp. 542 (E.D. La.1976); *Tedeschi v. Blackwood,* 410 F.Supp. 34 (D.Conn.1976); *Watters v. Parrish,* 402 F.Supp. 696 (W.D.Va.1975); *Graff v. Nicholl,* 370 F.Supp. 974 (N.D.Ill.1974), *Mays v. Scranton City Police Dept.,* 503 F.Supp. 1255 (M.D.Penn.1980), *Craig v. Carson,* 449 F.Supp. 385 (M.D.Fla.1978). It is interesting that these cases have noted that a governmental body has a legitimate interest in assessing such costs against the owner of the vehicle.

██ The Patrol is charged under § 43.-160 with the duty of enforcing the laws of this state relating to the operation and use of vehicles on the highways. Furthermore, a peace officer is *required* by § 301.390.2 to seize and take possession of any vehicle which has an altered, removed or defaced VIN plate. To charge the Patrol for the storage costs of vehicles seized under § 301.390.2 is absurd. Such a ruling would have a chilling effect on the Patrol's willingness and enthusiasm for enforcing the laws of this state.

The Patrol also argues that Diekman should be responsible for the costs because his actions, or more accurately his inaction, caused the vehicle to be impounded for over three years and such conduct constitutes laches.

Diekman, although not notified by the Patrol (due to the failure of Diekman to register the vehicle under his name), did in fact receive notice that his vehicle had been seized by the Patrol and did contact the Patrol the day following the seizure. At that time, Diekman was informed of the faulty VIN plate and was instructed that to regain possession of the vehicle he must apply to the director of revenue for the issuance of a new VIN.

Section 301.380.1 states:

Whenever the original, manufacturer's or other distinguishing number on any motor vehicle, trailer or motor vehicle tire has been destroyed, removed, covered, altered, defaced or is otherwise nonexistent, the director of revenue, upon application, payment of a fee of *one dollar,* and satisfactory proof of ownership by the owner, shall issue a certificate authorizing the owner to place a special number designated by the director of revenue upon the vehicle, trailer or tire. (Emphasis added.)

Furthermore, §§ 301.390.3 and .5 require that after a vehicle has been seized under § 301.390.2, the owner *must* receive a new VIN from the director of revenue before the vehicle shall be released to him.

Diekman is charged with the knowledge of the above provisions for "it is well-established that persons owning property within a state are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." *Texaco, Inc. v. Shori,* 454 U.S. 516, 532, 102 S.Ct. 781, 793, 70 L.Ed.2d 738 (1982). Diekman knew where his vehicle was being stored and he knew what was required to obtain its release. It would have cost Diekman (and everyone for that matter) considerably less effort and expense had Diekman sought to regain possession of the vehicle immediately following its seizure.

██ Laches applies when an unreasonable delay, caused by one party, works to the disadvantage of the other party. *Metropolitan St. Louis Sewer Dist. v. Zykan,* 495 S.W.2d 643, 656 (Mo.1973). Diekman was required by law to obtain a new VIN and the burden upon him to do so was de minimis. It was unreasonable for Diekman to fail to do what he was required by law to

do and the delay which ensued resulted in substantial disadvantage to the Patrol. Such conduct clearly constitutes laches, and therefore, Diekman is estopped to deny liability for the towing and storage costs.

Because Diekman was aware that he could regain his vehicle at anytime, and in fact was instructed by the Patrol on exactly how to proceed, and because Diekman did nothing to regain possession of his vehicle, he impliedly consented to have the vehicle stored. Such conduct resulted in Northwest acquiring a lien on the vehicle for the amount due for the towing and storage. § 430.020, RSMo 1978, which in the portion thereof applicable herein reads, "Every person who shall keep or store any vehicle part or equipment shall, for the amount due therefor, have a lien."

That portion of the trial court's judgment which declares ownership of the vehicle in Diekman is affirmed. That portion of the trial court's judgment which declares "... in the matter of storage fees assessed up to and including March 29, 1985 be between Missouri Highway Patrol and Donny Bruce (Northwest)" is in all respects reversed as being against the weight of the evidence and the erroneous application of law. *Murphy v. Carron, supra*. Alternatively, it is found that Diekman, as owner of the vehicle, is responsible for all storage fees upon said vehicle and that a lien to the favor of Northwest, within § 430.020, upon said vehicle is declared.

Judgment is herein declared as follows: Ownership of the vehicle is established in Dennis Diekman. Possession of said vehicle or its release thereof to Dennis Diekman shall be occasioned only upon the satisfaction of two requirements. First, Dennis Diekman shall secure, in full compliance with § 301.380, a new vehicle identification number and shall offer requisite proof thereof to the Missouri Highway Patrol. Second, possession of said vehicle or the release thereof to Dennis Diekman shall be occasioned only upon the further satisfaction of storage fees claimed due by Donny Bruce d/b/a Northwest Towing Company, or the release of the lien upon said vehicle declared herein to the favor of Donny Bruce d/b/a Northwest Towing Co. Nothing in said judgment shall prevent or prejudice the rights of Dennis Diekman and Donny Bruce d/b/a Northwest Towing Company to seek a compromise or settlement of the claimed storage fees, nor shall either party be prejudiced or prevented herein from seeking other remedies under the law which either deems available to enforce their right of possession and/or their claimed lien interests. The trial court is, upon the remand of this cause, directed to enter judgment in full accordance with this opinion.

DOWD, P.J., and REINHARD, J., concur.